1   Janice P. Brown, Esq. (SBN 114433)
    brown@brownlawgroup.com
2   Arlene R. Yang, Esq. (SBN 297450)
    yang@brownlawgroup.com
3   **BROWN LAW GROUP**
    600 B Street, Suite 1650
4   San Diego, CA 92101
    Telephone: 619.330.1700
5   Facsimile: 619.330.1701

6   (additional counsel on signature page)

7   Attorneys for Defendant
    *Bank of America, N.A.*
8

9               **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11

12  FRANCIS LOPEZ, d/b/a FMS Accounting on       Case No. 4:20-cv-04172-JST
    behalf of himself and all others similarly
13  situated,

14              Plaintiff,                        **DEFENDANT'S NOTICE OF MOTION
                                                  AND MOTION TO DISMISS FOR
15          v.                                    FAILURE TO STATE A CLAIM;
                                                  MEMORANDUM OF POINTS AND
16  BANK OF AMERICA, N.A,                         AUTHORITIES IN SUPPORT THEREOF**

17              Defendant.                        Date: October 28, 2020
                                                  Time: 2:00 p.m.
18                                                Judge:  Hon. Jon S. Tigar
                                                  Location:  Oakland Courthouse
19                                                          Courtroom 6, 2nd Floor
                                                          1301 Clay Street
20                                                          Oakland, CA 94612
21
22                                                Action Filed:  June 24, 2020

23                  **NOTICE OF MOTION AND MOTION**
24
    **TO THE COURT, PLAINTIFF, AND ATTORNEYS OF RECORD:**
25
            **PLEASE TAKE NOTICE THAT** on October 28, 2020, at 2:00 p.m., or as soon
26
    thereafter as the matter may be heard, in Courtroom 6, 2nd Floor of the United States District
27
    Court, located at 1301 Clay Street, Oakland, CA 94612, before the Honorable Jon S. Tigar,
28

---

Defendant Bank of America, N.A. ("BofA"), by and through its undersigned attorneys, will and hereby does move the Court to dismiss Plaintiff's Complaint, and each cause of action, filed against BofA.

This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Complaint fails to allege facts sufficient to state any claim upon which relief can be granted. This motion is based upon this Notice of Motion and Motion, the included Memorandum of Points and Authorities, the declaration of Jesse T. Smallwood, the Request for Judicial Notice, any reply memorandum, the filings in this action, and such other written and oral argument as may be presented to the Court.

Dated: September 14, 2020

**BROWN LAW GROUP**

By:     /s/ Janice P. Brown

Janice P. Brown (SBN 114433)
Arlene R. Yang (SBN 297450)
600 B Street, Suite 1650
San Diego, CA 92101
Tel. 619-330-1700
Fax 619-330-1701
brown@brownlawgroup.com
yang@brownlawgroup.com

**WILLIAMS & CONNOLLY LLP**
Enu A. Mainigi (pro hac vice)
Kenneth C. Smurzynski (pro hac vice)
Craig D. Singer (pro hac vice)
Jesse T. Smallwood (pro hac vice)
725 12th Street, N.W.
Washington, D.C. 20005
Tel. 202-434-5000
Fax 202-434-5029
emainigi@wc.com
ksmurzynski@wc.com
csinger@wc.com
jsmallwood@wc.com

Attorneys for Defendant
*Bank of America, N.A.*

1

## **TABLE OF CONTENTS**

2 TABLE OF CONTENTS ................................................................................................................. i

3 TABLE OF AUTHORITIES ........................................................................................................ iii

4 MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

5 INTRODUCTION .........................................................................................................................1

6 BACKGROUND ...........................................................................................................................2

7    I.   The Small Business Administration's Section 7(a) Loan Program..................................2

8    II.  Congress Adopts the CARES Act and Creates the PPP......................................................4

9    III. The SBA's Regulations Implementing the PPP. ...............................................................5

10    IV. The Treasury Secretary and the AICPA Interpret the Agent Fee Rules Consistent with

11        BofA's Interpretation...................................................................................................6

12    V.  Plaintiff Filed This Lawsuit Without Entering into a Compensation Agreement ................7

13 PROCEDURAL STANDARD .......................................................................................................8

14 ARGUMENT .................................................................................................................................8

15   I .  NEITHER THE CARES ACT NOR THE IFR ENTITLES AGENTS TO FEES FROM

16       LENDERS IN THE ABSENCE OF A CONTRACT ...........................................................9

17      A. The CARES Act Does Not Require Lenders to Pay Fees to Agents...............................9

18      B. The CARES Act Directs the SBA to Implement the PPP Under the Section 7(a) Loan

19         Program, Which Has Clear Rules for Agent Compensation. ........................................10

20      C. Plaintiff's Reliance on the IFR and the Information Sheet Is Misplaced. .....................12

21         1.  The IFR Does Not Entitle Agents to Receive Fees. ..............................................12

22         2.  The SBA Did Not Change Its Longstanding Agent Fee Regulations. ..................14

23   II.  PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NO

24       RIGHT TO AGENT FEES AND FOR ADDITIONAL REASONS. ................................16

25      A. The CARES Act Does Not Have a Private Right of Action. .........................................16

26      B. The Lack of a Private Right of Action Defeats Plaintiff's Declaratory Judgment

27        Claim...........................................................................................................................18

28      C. The Lack of a Private Right of Action Defeats Plaintiff's Common-Law Claims. ........18

D. Plaintiff's Common-Law Claims Should Be Dismissed. ..................................................19

   1.  Plaintiff's Unjust Enrichment Claim Fails. ..........................................................19

   2.  Plaintiff's Conversion Claim Fails. ......................................................................20

   3.  Plaintiff's Money Had and Received Claim Fails. ................................................21

   4.  Plaintiff's Breach of Contract – Third Party Beneficiary Claim Fails. ................23

E. Plaintiff's Unfair Competition Law Claim Fails. ............................................................24

CONCLUSION ......................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)....................................................................18

*Alexander v. Sandoval*, 532 U.S. 275 (2001).............................................................................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................8

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988)................................................8

*Christensen v. Harris County*, 529 U.S. 576 (2000)...................................................................14

*Crandal v. Ball, Ball & Brosamer, Inc.*, 99 F.3d 907 (9th Cir. 1996) .........................................17

*Cruz v. United States*, 219 F. Supp. 2d 1027 (N.D. Cal. 2002) .............................................19, 20

*Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862 (N.D. Cal. 2010).........................20

*Davis v. Mich. Dept. of Treasury*, 489 U.S. 803 (1989) .............................................................11

*DHS v. MacLean*, 574 U.S. 383 (2015) ......................................................................................10

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014)................8

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)..........................................................14

*Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct.
    5, 2010) ...............................................................................................................................25

*Fishman v. Tiger Nat. Gas, Inc.*, No. C 17-05351 WHA, 2018 WL 2552597 (N.D. Cal.
    June 4, 2018) .......................................................................................................................23

*Florey Inst. of Neuroscience & Mental Health v. Kleiner Perkins Caufield & Byers*, 31 F.
    Supp. 3d 1034 (N.D. Cal. 2014) ....................................................................................19, 21

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ..............................................................................17

*Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594 (Ct. App. 2014).................................24

*Hendrickson v. Octagon Inc.*, 225 F. Supp. 3d 1013 (N.D. Cal. 2016) ........................................21

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018)..................................................................25

*In re Bartoni-Corsi Produce, Inc.*, 130 F.3d 857 (9th Cir. 1997).................................................21

*In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 WL 4020104 (N.D. Cal. Nov. 19,
    2009) ...................................................................................................................................23

*Jafari v. FDIC*, No. 12CV2982-LAB RBB, 2015 WL 3604443 (S.D. Cal. June 8, 2015) ...........23

*Keene Corp. v. United States*, 508 U.S. 200 (1993) ....................................................... 10

*King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856 (N.D. Cal. 2019) .......................... 22

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999) ................. 24

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) .......................................................... 23

*Lil' Man in the Boat, Inc. v. City & Cty. of San Francisco*, No. 17-CV-00904-JST, 2018
    WL 4207260 (N.D. Cal. Sept. 4, 2018) ................................................................. 19

*Lindahl v. OPM*, 470 U.S. 768 (1985) .......................................................................... 11

*Lopez v. Jet Blue Airways*, 662 F.3d 593 (2d Cir. 2011) .............................................. 17

*Lyng v. Payne*, 476 U.S. 926 (1986) ............................................................................ 12

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106 (9th Cir. 2010) ...................... 17, 18

*Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002) ....................................... 17

*Profiles, Inc. v. Bank of Am. Corp.*, 2020 WL 1849710 (D. Md. Apr. 13, 2020) .............. 16, 17, 18

*Ray v. BlueHippo Funding, LLC*, No. C06-01807 JSW, 2008 WL 1995113 (N.D. Cal.
    May 6, 2008) ..................................................................................................... 22

*Republic of Marsh. Is. v. United States*, 865 F.3d 1187 (9th Cir. 2017) .......................... 18

*Rodriguez v. Sony Computer Entm't Am. LLC*, No. C 11-4084 PJH, 2012 WL 4464563
    (N.D. Cal. Sept. 25, 2012), *aff'd*, 801 F.3d 1045 (9th Cir. 2015) ........................... 24

*Ross v. U.S. Bank, N.A.*, 542 F. Supp. 2d 1014 (N.D. Cal. 2008) ................................ 20

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ............................. 11

*Schilling v. Rogers*, 363 U.S. 666 (1960) ....................................................................... 18

*Segalman v. Sw. Airlines Co.*, 895 F.3d 1219 (9th Cir. 2018) ....................................... 18

*Serv. Employees Int'l Union v. United States*, 598 F.3d 1110 (9th Cir. 2010) ................... 10

*Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (Ct. App. 2007) ........................... 25

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) .................. 24

*Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 3:20-cv-5425-TKW-HTC, 2020
    WL 4882416 (N.D. Fla. Aug. 17, 2020) ......................................................... passim

*Tindell v. Murphy*, 22 Cal. App. 5th 1239 (Ct. App. 2018) ......................................... 20

*United Energy Trading, LLC v. PG&E*, 177 F. Supp. 3d 1183 (N.D. Cal. 2016) .................. 20

*United States v. Bucher*, 375 F.3d 929 (9th Cir. 2004) ..................................................................13

*United States v. Elliott*, 205 F. Supp. 581 (N.D. Cal. 1962) .........................................................22

*United States v. Fields*, 783 F.2d 1382 (9th Cir. 1986) ...............................................................12

*United States v. Wells*, 519 U.S. 482 (1997) ................................................................................9

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ........................................................9

*Voris v. Lampert*, 446 P.3d 284 (Cal. 2019) ...............................................................................21

*Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402 (N.D. Cal. 1992) ...................................20

*Warner v. Wells Fargo Bank, N.A.*, No. SACV 11-00480 DOC, 2011 WL 2470923 (C.D.

    Cal. June 21, 2011) ................................................................................................................19

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) ..........................................................11, 14

**OTHER AUTHORITIES**

13 C.F.R. § 103.1 ......................................................................................................................3, 13

13 C.F.R. § 103.2 ..................................................................................................................3, 5, 14

13 C.F.R. § 103.5 ...................................................................................................................passim

13 C.F.R. § 120.10 ........................................................................................................................15

61 Fed. Reg. 2,680 ........................................................................................................................13

61 Fed. Reg. 2,682 ..........................................................................................................................4

85 Fed. Reg. 7,627 ....................................................................................................................3, 14

85 Fed. Reg. 20,811–12 .............................................................................................................5, 10

85 Fed. Reg. 20,816 ...............................................................................................................6, 9, 12

15 U.S.C. § 636 ...........................................................................................................................passim

15 U.S.C. § 642 ...........................................................................................................................3, 4

15 U.S.C. § 650 ............................................................................................................................18

15 U.S.C. § 9005 ............................................................................................................................4

28 U.S.C. § 2201 ..........................................................................................................................18

Cal. Civ. Code § 1559 ..................................................................................................................23

California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. .................2, 8, 24

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3   This is one of dozens of cases filed across the country by putative "agents" claiming that

4   they are entitled to fees from lenders that provided loans to small businesses through the federal

5   government's Paycheck Protection Program ("PPP").  Each action raises the same dispositive

6   question of law: Are agents entitled to payment from lenders when the lenders never promised or

7   agreed to pay them?  As the only court to address this issue to date decisively concluded, "The

8   short answer is 'no.'"  *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 3:20-cv-5425-

9   TKW-HTC, 2020 WL 4882416, at *1 (N.D. Fla. Aug. 17, 2020).  That answer is clear from the

10  statutory and regulatory text and structure, from the longstanding regulatory scheme of which the

11  PPP is a part, and from long-settled background legal principles—including the fundamental

12  proposition that persons may not be compelled to do business with others in the absence of an

13  agreement or even notice of the other's existence.  The Treasury Secretary also expressly

14  confirmed that answer in recent Congressional testimony, in which he made clear that any fees

15  paid to agents under the PPP are "*intended to be based upon a contractual relationship between*

16  *the agent and the bank*."  Exhibit 1 (emphasis added).[1]

17      Plaintiff is an accountant who allegedly assisted an unnamed business in applying for a

18  loan from Bank of America, N.A. ("BofA") under the PPP, which is administered by the Small

19  Business Administration ("SBA") and the Treasury Department.  Plaintiff does not allege he

20  complied with any of the longstanding SBA requirements for seeking agent fees "in a[] matter

21  involving SBA assistance."  13 C.F.R. § 103.5(a).  For example, he does not allege that he

22  "execute[d] and provide[d] to SBA a compensation agreement" signed by the lender, agent, and

23  applicant before seeking such fees.  *Id*.

24      Instead, Plaintiff claims he was not required to comply with those requirements because,

25  he argues, under the PPP, a lender must pay fees to any self-proclaimed agent who declares that

26  _____

27  [1] All exhibits referenced are included as exhibits to the accompanying Declaration of Jesse T.
    Smallwood and subject to judicial notice as set forth in the accompanying Request for Judicial

28  Notice.

he assisted a borrower, even where the lender never had notice of the agent or his supposed work, let alone agreed to pay the agent in exchange for that work.  In effect, Plaintiff asks this Court to sanction his effort to dodge the regulatory prerequisites that agents must satisfy before they may receive fees "in any matter involving SBA assistance."  *Id.*  That position is contrary to law, and the Court should reject it.  The central premise underlying all of Plaintiff's claims—that he is entitled to agent fees under the PPP simply by claiming to have assisted PPP loan applicants, without ever having contracted with the lenders to do that work—"finds no support" in the statute or regulations creating the PPP, as the court in the *Sport & Wheat* case forcefully concluded.  2020 WL 4882416, at *2.

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 111-31 (2020) does *not* require lenders to pay agent fees "absent an agreement to do so."  *Id.* at 6.  If Congress had intended to require lenders to compensate agents of PPP applicants, regardless of whether those agents were engaged by the lenders (or even were known to them), it would have said so explicitly—as it did when it *required* the SBA to pay fees to *lenders* for making PPP loans under the CARES Act.  15 U.S.C. § 636(a)(36)(P)(i).  But Congress did not do that: The CARES Act contains no language requiring the payment of agent fees.  Indeed, its sole reference to such fees authorizes the SBA only to *limit* them.  *Id.* § 636(a)(36)(P)(ii).

The Complaint should be dismissed for several additional reasons: (1) neither the CARES Act nor the Small Business Act, which the PPP amends, creates a private right of action, which defeats Plaintiff's claim for declaratory relief (Count I); (2) Plaintiff's state common-law claims (Counts II–V) fail for the same reasons, and because Plaintiff fails to plead adequately their necessary elements; and (3) Plaintiff's claim under the California Unfair Competition Law (Count VI) fails because there was nothing unlawful about Defendant's alleged actions.  For these and other reasons, the Complaint should be dismissed with prejudice.

## BACKGROUND

### I.    The Small Business Administration's Section 7(a) Loan Program.

The SBA's loan guarantee program has a long history.  Under the SBA's largest loan program, the "Section 7(a)" Loan Program, the SBA will guarantee a percentage of a lender's

loan to a small business if certain conditions are met.  *See* 15 U.S.C. § 636(a).  As part of this program, "agents" may assist in submitting Section 7(a) loan applications under specified circumstances.  *See* 13 C.F.R. § 103.2(b).[2]  Nothing in the Small Business Act or its implementing regulations requires the use of an agent, and in less than 3% of approved loans was one used.  *See* 85 Fed. Reg. 7,627 (Feb. 10, 2020) (reporting statistics for 2013–17).

In the Small Business Act, Congress required that if a borrower utilizes an agent, it must "certify to the Administration the names of any attorneys, agents, or other persons engaged by or on behalf of such business enterprise for the purpose of expediting applications made to the Administration for assistance of any sort, and the fees paid or to be paid to any such persons." 15 U.S.C. § 642.

Building on these requirements, Part 103 of the SBA's regulations[3] provide a comprehensive scheme that agents must satisfy when "[p]reparing or submitting on behalf of an applicant an application for financial assistance of any kind" from the SBA.  13 C.F.R. § 103.1(b)(1).  Among other things, for an agent to receive compensation, it "must execute and provide to SBA a compensation agreement," which "governs the compensation charged for services rendered or to be rendered to the Applicant or lender in any matter involving SBA assistance."  *Id.* § 103.5(a).  By requiring a compensation agreement *before* an agent may receive a fee, Congress and the SBA made agent compensation under the 7(a) Loan Program an issue to be settled by contract—not a statutory or regulatory entitlement.  *Id.*  These requirements have been in place since 1996.  *See* 61 Fed. Reg. 2,679, 2,682.

The "SBA provides the form of compensation agreement . . . to be used by Agents."  13 C.F.R. § 103.5(a).  Agents must use the SBA Form 159 Fee Disclosure and Compensation Agreement in connection with Section 7(a) loans.  *See* Exhibit 2.  Form 159 "must be completed

---

[2] An "agent" is defined as any "authorized representative, including an attorney, accountant, consultant, packager, lender service provider, or any other individual or entity representing an Applicant or Participant by conducting business with SBA."  13 C.F.R. § 103.1(a).

[3] Section 1102(e) of the CARES Act rescinded certain modifications to those regulations that SBA had made in February 2020.  This brief cites to the currently operative version of Part 103.

and signed by the SBA Lender and Applicant whenever an Agent is paid by either the Applicant or the SBA Lender in connection with the SBA loan application." *Id.* at 1.  The agent must also certify the services to be performed and the compensation to be paid in connection with the loan. *Id.* at 2–3.  If the fee exceeds $2,500, the agent must provide "1) a detailed explanation of the work performed; and 2) the hourly rate and the number of hours spent working on each activity." *Id.* at 2.  In 2015, the SBA Office of the Inspector General prepared a report entitled "SBA Needs to Improve Its Oversight of Loan Agents," which observed that 13 C.F.R. § 103.5 and Form 159 were adopted "to mitigate the risk associated with loan agent participation, and to protect program participants and taxpayers from fraud and abuse."  Exhibit 3 at 5.

## II.   Congress Adopts the CARES Act and Creates the PPP.

In response to the global pandemic and national economic crisis caused by COVID-19, Congress passed and the President signed the CARES Act.  The PPP, one component of the CARES Act, made more than $600 billion in loans available to small businesses.  *See* CARES Act § 1102(a)(2).  PPP loans are fully forgivable if the borrower retains employees and uses the loan for payroll costs or other approved purposes.  15 U.S.C. § 9005 (b), (d).

Congress directed the SBA to administer and guarantee PPP loans "under the same terms, conditions, and processes as a loan made under" the SBA's Section 7(a) Loan Program, unless "otherwise provided" by the CARES Act.  *Id.* § 636(a)(36)(B).  The CARES Act encourages lenders to offer PPP loans by directing the SBA to reimburse lenders for the cost of making loans on a per-loan, percentage basis.  *Id.* § 636(a)(36)(P)(i) (providing for fees ranging from 1% for loans of $2 million or more to 5% for loans of $350,000 or less).

In contrast to Congress's instruction that *lenders* "shall" receive a fee for processing PPP loans, the CARES Act contains no similar provision with respect to agent fees.  The CARES Act addresses agent fees in a provision titled "Fee Limits."  *Id.* § 636(a)(36)(P)(ii).  Agents that assist an eligible recipient "*may not collect a fee in excess* of the limits established by the Administrator." *Id.* § 36(a)(36)(P)(ii) (emphasis added).[4]  *See Sport & Wheat*, 2020 WL

---

[4] The only other section that mentions agents is § 636(a)(36)(P)(iv), a "Sense of the Senate"

4882416, at *3 (finding that the "different language used by Congress in mandating payment of lenders ('shall reimburse') and limiting agent fees ('may not collect') is indicative of an intent not to require lenders to pay agent fees").  Aside from this reference, the CARES Act does not alter the SBA's existing scheme for regulating agents and their compensation.

### III.   The SBA's Regulations Implementing the PPP.

Just hours before the PPP application window opened, the SBA issued its Interim Final Rule ("IFR") regulating the PPP.  85 Fed. Reg. 20,811 (Apr. 15, 2020).  The IFR required small businesses applying for a PPP loan to submit a form—the Paycheck Protection Program Borrower Application Form (Form 2483).  Exhibit 4.  *See* 85 Fed. Reg. 20,812.  The Borrower Application Form requires the borrower to provide basic identifying information and average monthly payroll and number of employees, answer eight eligibility questions, and make certifications about the application's accuracy and how the loan proceeds will be used.  Exhibit 4.  Borrowers are permitted to complete SBA loan applications directly and do not need to obtain an agent to conduct business on their behalf.  *See* 13 C.F.R. § 103.2(a) ("If you are an Applicant . . . you may conduct business with SBA without a representative.").  Lenders are required to complete the Paycheck Protection Program Lender Application Form (Form 2484), which requires basic identifying information and certifications, including information as to whether "the Lender [is] using a third party to assist in the preparation of the loan application or application materials, or to perform other services in connection with this loan."  Exhibit 5.

The IFR mentions agents in just one section, setting the "total amount that an agent may collect" for assisting with a PPP loan application:

> **c. Who pays the fee to an agent who assists a borrower?**
>
> Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an

---

provision that directs the SBA to "issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets . . . ."

application for a PPP loan (including referral to the lender) may not exceed:

i. One (1) percent for loans of not more than $350,000;

ii. 0.50 percent for loans of more than $350,000 and less than $2 million; and

iii. 0.25 percent for loans of at least $2 million.

The Act authorizes the Administrator to establish limits on agent fees. The Administrator, in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans.

85 Fed. Reg. 20,816.  Like the CARES Act, nothing in the IFR *requires* lenders to pay fees to anyone claiming to be an agent of a borrower.  *See Sport & Wheat*, 2020 WL 4882416, at *3 (finding that the IFR "does not <u>require</u> that lenders share their fees . . . instead, the language simply explains that, if an agent is to be paid a fee, the fee must be paid by the lender from the fee it receives from the SBA").  Nor does the IFR modify the SBA's existing regulations governing agent fees.

### IV.     The Treasury Secretary and the AICPA Interpret the Agent Fee Rules Consistent with BofA's Interpretation.

Consistent with the clear language and structure of the CARES Act and SBA rules, BofA consistently has declined to pay fees to purported "agents" in the absence of a pre-existing contractual arrangement.  BofA has stated its position unequivocally on its website: "[I]n the absence of a preloan approval written agreement between the agent and Bank of America, Bank of America does not pay fees or other compensation to agents who represent or assist borrowers through the [PPP]."  Exhibit 6.

The Association of International Certified Public Accountants ("AICPA") and Treasury Secretary Mnuchin share precisely the same view.  Shortly after the SBA began accepting PPP applications, the AICPA cautioned accountants—like Plaintiff—that "there is a possibility that you will not be paid for your services" assisting borrowers with PPP applications.  Exhibit 7.

The AICPA advised agents to "discuss this issue with clients and the banks to ensure there is an understanding, preferably in writing, as to how and when any fees will be paid." *Id. See also* Exhibit 8 ("To help advance a clear and orderly loan application process, we're recommending the CPA contact the lender prior to offering assistance and performing advisory work to the client.  This will ensure the lender has agreed to compensate the CPA firm for its service.  If the lender agrees to compensate the CPA firm for its service, the relationship should be documented and disclosed to the small business.").

More recently, on June 30, 2020, Secretary Mnuchin testified before the House Committee on Financial Services concerning the PPP.  He was asked whether "an agreement between a bank and an agent [was] required before any work on the application is completed." Exhibit 1.  Secretary Mnuchin explained that any fees paid to agents was "*intended to be based upon a contractual relationship between the agent and the bank.*"  *Id.* (emphasis added).

## V.    Plaintiff Filed This Lawsuit Without Entering into a Compensation Agreement.

Plaintiff is an accountant based in California.  In his Complaint, Plaintiff claims entitlement to agent fees from BofA for unspecified assistance he allegedly provided to a PPP applicant.  Plaintiff asserts this claim even though he never identified himself to BofA nor made any attempt to enter into an agreement with BofA to be compensated for assisting any PPP loan applicants.  Although Plaintiff alleges he helped a client apply for a PPP loan from BofA, his Complaint fails to identify the name of this client, or any details of the work supposedly done for his client.

Plaintiff's central contention is that he suffered "financial harm as a result of [BofA's allegedly] unlawful and unfair actions by being deprived of statutorily mandated compensation for professional services."  Compl. ¶ 53.  Based on that central contention, Plaintiff asserts a claim for Declaratory Relief (Count I), as well as a hodge-podge of state law claims, including Unjust Enrichment (Count II), Conversion (Count III), Money Had and Received (Count IV), Breach of Contract – Third Party Beneficiary (Count V), and a violation of the California Unfair Competition Law (Count VI).  Each of these six claims hinges upon Plaintiff's contention that

the CARES Act and its accompanying regulations require lenders to pay a portion of their PPP loan-processing fees to agents, regardless of whether the lender agreed to pay such fees or even knew that the agent was providing services to a borrower.[5]

## PROCEDURAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.  See also Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) ("Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." (quotation marks and citation omitted)).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

## ARGUMENT

All of Plaintiff's claims require him to demonstrate at the outset a "statutorily mandated" entitlement to agent fees, regardless of whether the lender agreed to pay such fees or even knew that the agent was providing services to a borrower.  Section I explains that neither the CARES Act nor the IFR contain such a provision.  This dooms all of his claims. *See Sport & Wheat*, 2020 WL 4882416, at *2 (holding that the premise that "the CARES Act and its implementing regulation <u>require</u> lenders to pay the borrowers' agent fees" finds "no support in the plain language of the statute or the regulation") (footnote omitted).  Section II addresses additional, independent reasons why, even if the Court were to adopt Plaintiff's reading of the statute and accompanying regulations, his claims nonetheless fail.

---

[5] *See* Compl. ¶¶ 69, 72 (Count I); ¶¶ 75–76, 78 (Count II); ¶¶ 81–83, 85–87 (Count III); ¶¶ 90–92, 94–95 (Count IV); ¶¶ 101–03, 105–06 (Count V); and ¶¶ 110–12, 114 (Count VI).

## I.   NEITHER THE CARES ACT NOR THE IFR ENTITLES AGENTS TO FEES FROM LENDERS IN THE ABSENCE OF A CONTRACT.

In support of his claimed entitlement to agent fees, Plaintiff does not refer to a single section, sentence, or even a single word in the CARES Act.  Rather, he relies solely on a misreading of a line in the IFR clarifying the *limits* on agent fees.  Pursuant to the CARES Act's mandate that agents "*may not* collect a fee in excess of the limits established by the Administrator," 15 U.S.C. § 636(a)(36)(P)(ii) (emphasis added), the IFR provides that "[a]gent fees will be paid by the lender out of the fees the lender receives from SBA," 85 Fed. Reg. 20,816.  According to Plaintiff, that one statement upended the SBA's existing regulatory framework and longstanding practice for when and under what circumstances agent fees are paid by creating a brand new blanket entitlement to agent fees.  But the IFR says no such thing, and none of the SBA, Treasury, or Congress even suggested it intended to create any new sweeping entitlement to agent fees.  To the contrary, the Treasury Secretary has expressly disclaimed that result in Congressional testimony, and the only federal court to have addressed this issue has soundly rejected Plaintiff's theory.  *Sport & Wheat*, 2020 WL 4882416.

### A.  The CARES Act Does Not Require Lenders to Pay Fees to Agents.

Although the Complaint is premised on the proposition that "Congress" provided that agents "who assisted small business owners would be compensated," Compl. ¶ 7, no provision in the CARES Act imposes such a requirement.  *See, e.g.*, *Sport & Wheat*, 2020 WL 4882416, at *2–3.  The CARES Act's only reference to agent fees is *prohibitive*, providing for a ceiling in the event a fee is owed: "An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator."  15 U.S.C. § 636(a)(36)(P)(ii).  *See Sport & Wheat*, 2020 WL 4882416, at *2.

"[A] natural reading of the full text" of a statute is "the first criterion in the interpretive hierarchy."  *United States v. Wells*, 519 U.S. 482, 490 (1997); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013) ("[I]t would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope.").  "Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that

---

Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (alteration omitted); *see also DHS v. MacLean*, 574 U.S. 383, 391 (2015).

A restriction on the amount of fees an agent "may . . . collect" imposes no affirmative duties on lenders to pay a fee. Congress knows how to create a mandatory fee structure and did so explicitly in the subsection immediately preceding the limitation on agent fees. Congress mandated that the SBA "*shall reimburse* a lender authorized to make a covered loan at a rate" based on the size of the loan. 15 U.S.C. § 636(a)(36)(P)(i) (emphasis added). *See Serv. Employees Int'l Union v. United States*, 598 F.3d 1110, 1113 (9th Cir. 2010) ("The word 'shall' is ordinarily 'The language of command.'" (quotation marks and citation omitted)). No similar mandate appears in the statute with respect to agent fees. Thus, as the court in *Sport & Wheat*, concluded, "the different language used by Congress in mandating payment of lenders ('shall reimburse') and limiting agent fees ('may not collect') is indicative of an intent not to require lenders to pay agent fees." 2020 WL 4882416, at *3. The stark contrast between the two CARES Act provisions governing lender fees and agent fees—coming one right after the other—confirms that Congress did not intend to *require* lenders to pay agent fees absent a lender's contractual undertaking to do so.

**B. The CARES Act Directs the SBA to Implement the PPP Under the Section 7(a) Loan Program, Which Has Clear Rules for Agent Compensation.**

The goal of the PPP was to provide liquidity quickly to small businesses facing unprecedented economic catastrophes. Rather than draft a new loan program, Congress directed the SBA to make PPP loans available under the SBA's established Section 7(a) Loan Program. *See* CARES Act § 1102 (amending 15 U.S.C. § 636(a)); 85 Fed. Reg. 20,811–12 (describing the PPP as a "new 7(a) program"). Congress further directed that "[e]xcept as otherwise provided" in Section 636(a)(36), the SBA "may guarantee [PPP loans] under the *same terms, conditions, and processes* as a loan made under" the existing Section 7(a) Loan Program. 15 U.S.C. § 636(a)(36)(B) (emphasis added). *See also Sport & Wheat*, 2020 WL 4882416, at *3 ("The PPP was added to and exists within the framework of Section 7(a).").

In so doing, Congress incorporated the SBA's well-established eligibility requirements into the PPP, including the requirement of a compensation agreement to which the lender and applicant are also parties *before* an agent may receive a fee.  13 C.F.R. § 103.5(a).  "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change."  *Lindahl v. OPM*, 470 U.S. 768, 783 n.15 (1985) (quotation marks and citation omitted).  Courts read "the words of a statute" in "their context and with a view to their place in the overall statutory scheme."  *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (holding that agencies "must give effect to the unambiguously expressed intent of Congress") (quoting *Chevron, Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 838 (1984)).

While the CARES Act modified and supplemented certain components of the Section 7(a) Loan Program to fit the needs of the moment, nothing in the text, structure, history, or purpose of the CARES Act suggests that Congress intended to *exempt* PPP loans from the SBA's (and its own) longstanding rules regarding agent compensation—including the requirement that an agent enter into a "compensation agreement" with the lender and disclose that agreement to the SBA before any agent fees may be due.  13 C.F.R. § 103.5(a); 15 U.S.C. § 642 .  Aside from setting limits on agent fees, the CARES Act says nothing about them.  Congress therefore must have intended that the existing regulations concerning agent fees, which apply to "any matter involving SBA assistance," cover PPP loans as well.  *Id.*; *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").  The only court that has considered this issue agrees.  *See Sport & Wheat*, 2020 WL 4882416, at *4 (holding that "because these existing program requirements do not conflict with the IFR, they apply to agents who assist borrowers in obtaining loans under the PPP").

Deeply held principles of agency and freedom of contract support Congress's choice to leave undisturbed the SBA's 24-year-old rule requiring a compensation agreement among a lender, agent, and borrower as a precondition to the agent's entitlement to a fee.  *See* Restatement (First) of the Law of Restitution § 2 cmt. a. ("A person is not required to deal with another unless

---

1   he so desires."); Restatement (Second) of the Law of Agency § 441 cmt c. ("[O]ne has no duty to

2   pay for services officiously rendered without request although resulting in benefit to him.").

### C. Plaintiff's Reliance on the IFR and the Information Sheet Is Misplaced.

4       Plaintiff ignores the CARES Act, relying instead on a tortured reading of one provision in

5   the IFR and a related informal Information Sheet.  Compl. ¶¶ 33–34.  *See* Exhibit 9.  Neither

6   supports Plaintiff's claims.  Because Plaintiff's reading would conflict with the CARES Act and

7   the SBA's longstanding agent fee regulation, the Court should reject it.  *See Lyng v. Payne*, 476

8   U.S. 926, 937 (1986) (holding "an agency's power is no greater than that delegated to it by

9   Congress"); *United States v. Fields*, 783 F.2d 1382, 1384 (9th Cir. 1986) (courts choose

10  "meaning that gives full effect to all provisions of the statute").

### 1. The IFR Does Not Entitle Agents to Receive Fees.

12      *Nothing* in the IFR requires lenders to pay fees to agents.  Rather, the IFR *limits* the "total

13  amount that an agent *may* collect."  85 Fed. Reg. 20,816 (emphasis added).  To the extent an

14  agent "may" collect a fee, the IFR also directs that the fee "will be paid by the lender out of the

15  fees the lender receives from SBA," and not from "the borrower . . . or the PPP loan proceeds."

16  *Id.*  This result follows from the CARES Act's provision that an agent "may not collect a fee in

17  excess" of SBA limits.  Together, the Act and the IFR direct that where an agent is to be

18  compensated for assisting a lender or a borrower, such compensation must be paid by the lender,

19  up to a maximum amount set forth in the IFR.  But that does not change the longstanding rule

20  that an agent is not entitled to any compensation in the absence of a contractual arrangement with

21  the lender.  *See Sport & Wheat*, 2020 WL 4882416, at *3 ("This language does not <u>require</u> that

22  lenders share their fees.").  The Treasury Secretary confirmed as much when he testified recently

23  about this exact issue, testifying that agent fees were "intended to be based upon a contractual

24  relationship between the agent and the bank."  Exhibit 1.  *See supra* Background, Section IV.

25      Plaintiff's reading of the IFR would upend the SBA's long-established and well-reasoned

26  structure for regulating agent fees by eliminating the requirement that lenders, agents, and

27  borrowers agree on the use of an agent and the agent's compensation—and replacing it with an

28  unregulated and unmanageable payment guarantee.  As Plaintiff would have it, agents are

---

entitled in all cases to claim fees from lenders based solely on the loan amount, regardless of the time allegedly expended, the services purportedly performed, or the value of those services. And the agents would be under no obligation to explain or justify their work. This is a recipe for fraud. Exhibit 10. It would also be unmanageable for the lenders. It would place an unrealistic burden on lenders to monitor and confirm that the purported agents actually performed the claimed services. And if multiple agents claim they assisted with a single PPP loan application, the lender's fee could quickly could be exhausted, even if the agents were *unknown* to the lenders until after the loan was fully processed. Furthermore, it is unclear who would constitute an agent under Plaintiff's definition. If an employee for a PPP loan recipient claimed that she assisted her employer with preparing its application, she could conceivably seek a share of the lender's processing fees, capturing compensation that Congress directed to lenders. Neither Congress nor the SBA intended such absurd results. *United States v. Bucher*, 375 F.3d 929, 932 (9th Cir. 2004) (rejecting a construction of a regulation that would lead to an "absurd result[]").[6]

Plaintiff relies heavily on an informal Information Sheet issued by the Treasury Department. Exhibit 9. The two-page document, however, merely paraphrases the CARES Act and the IFR by providing that if agents are entitled to fees, those fees "will be paid out of lender" fees and "[t]he lender will pay the agent." *Id.* at 2. Like the CARES Act and the IFR, the Treasury Department's Information Sheet does not guarantee that agents will receive fees, as the Treasury Secretary confirmed. Exhibit 1. Nor could it: "[I]nterpretations contained in policy statements . . . lack the force of law." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

---

[6] To the extent Plaintiff is aggrieved that the IFR "prohibit[s] Agents from collecting fees from applicants or taking fees from the PPP loan," Compl. ¶ 8, his complaint is with the SBA, not lenders. The CARES Act does not prohibit agents from seeking compensation from loan applicants, and the SBA's pre-existing Section 7(a) regulations permit agents to do so. *See* 13 C.F.R. § 103.1(a). Third parties, moreover, can assist applicants—whether by providing advice or preparing ordinary-course business documentation—without acting as an "agent" as that term is defined under SBA regulations. *See* 13 C.F.R. § 103.1(a), (b); *see also* Standards for Conducting Business with SBA, 61 Fed. Reg. 2,679, 2,680 (Jan. 29, 1996). In that capacity, those third parties are allowed to seek fees directly from borrowers, and thus will have an incentive to offer their services to borrowers who need them.

### 2. The SBA Did Not Change Its Longstanding Agent Fee Regulations.

Longstanding SBA regulations require that compensation agreements must be in place for agents to receive payment in "any matter involving SBA assistance," 13 C.F.R. § 103.5—which necessarily includes PPP loans. Nothing in the CARES Act or the IFR purports to alter that requirement. Accordingly, the court in *Sport & Wheat* "agreed" with the defendants' position that "the existing Section 7(a) regulations require such an agreement as a prerequisite to the lender's payment of agent fees." 2020 WL 4882416, at *3.

Agencies must not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (citing *United States v. Nixon*, 418 U.S. 683, 696 (1974)). "[T]he requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position," *id.*, which the SBA has not done. Agencies do not "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions – [they] do not, one might say, hide elephants in mouseholes." *See Whitman*, 531 U.S. at 468. This further confirms that the agency did not alter course. On the contrary, 13 C.F.R. § 103.5 and the IFR work in concert—with the former governing an agent's *eligibility* to receive a fee, and the latter governing the *source* and *maximum amount* of any such fee, with no hint of overlap or contradiction. The court in *Sport & Wheat* held exactly this. 2020 WL 4882416, at *3–4.

The SBA's required forms for PPP loans confirm that the SBA did not intend to change its longstanding rules preventing agents from collecting fees in the absence of a contract. The Borrower Application Form states, "[t]he estimated time for completing this application, including gathering data needed, is 8 minutes." Ex. 4 at 3. The SBA's regulations have long contemplated that small businesses can apply for Section 7(a) loans, including PPP loans, "without a representative," 13 C.F.R. § 103.2(a), which more than 97 percent of businesses do, 85 Fed. Reg. 7,627. Had the SBA intended to break decades of settled SBA policy to entitle every putative agent that claimed to help a PPP borrower to a fee, it would have at least required that those agents be *identified* to their respective lenders. But the Borrower Application Form

does not ask borrowers to identify agents who assisted them; that information is collected on the traditional Form 159 Compensation Agreement. *See* Exhibit 2.

The SBA's PPP Lender Agreement also is inconsistent with Plaintiff's position.[7]  This form provides that the SBA will only guarantee loans if lenders approve, close, disburse, service, and liquidate PPP loans in accordance with the PPP and "any other Loan Program Requirements, as defined in 13 C.F.R. § 120.10," Exhibit 11 at § 2, which in turn defines "Loan Program Requirements" as including "official SBA notices and forms applicable to the 7(a) Loan Program," 13 C.F.R. § 120.10.  These existing "terms, conditions, and processes" include the requirement that agents must "execute and provide to the SBA a compensation agreement" using Form 159 before agents may receive "compensation charged for services rendered . . . to the Applicant or lender in any matter involving SBA assistance."  13 C.F.R. § 103.5(b).

The SBA's Lender Application Form is in accord.  Unlike the *Borrower* Application Form, the *Lender* Application Form asks the lender to identify whether the *lender* used an agent.  *See* Exhibit 5 at Question K.  When the lender retains an agent, the requisite contractual obligation exists and the agent may claim a fee pursuant to the contract, within the limitations set by the CARES Act and the IFR.  Tracking those requirements, the Lender Application notes that "[i]f yes, Lender may not pass any agent fee through to the Applicant or offset or pay the fee with the proceeds of this loan."  *Id.*  That the SBA asked lenders to identify lender-engaged agents, but did not ask borrowers to identify borrower-engaged agents, further confirms that the SBA did not intend every self-described agent to receive a fee from the lender.[8]

Plaintiff's proposed interpretation also would contradict SBA policy guarding against fraud and abuse by permitting agents to claim after-the-fact to have assisted borrowers with PPP

---

[7] The Lender Agreement (as distinct from the Lender Application Form) is a form lenders complete in order to be eligible to participate in the PPP.  *See* Exhibit 11.

[8] Plaintiff attempts to blame BofA for failing to gather agent information.  Compl. ¶ 40 ("By failing even to ask borrowers whether they utilized the assistance of an Agent . . . .").  But the SBA explicitly requires lenders to "as[k] for the same information (*using the same language*) as the [SBA's] Borrower Application Form."  Exhibit 12 (emphasis added).  The Borrower Application Form makes no reference to agents.  Exhibit 4.

applications and demand a portion of the lender's processing fee regardless of the services

provided and without the lender's consent.  The SBA's Form 159 Compensation Agreement

provides a triple-check against fraud: agents, borrowers, and lenders must consent to the

relationship.  Exhibit 2.  Lenders must also confirm that the agent is not "debarred, suspended,

proposed for debarment, declared ineligible or voluntarily excluded from participation in th[e]

transaction by any Federal department or Agency."  *Id.*  Given the SBA's documented concerns

about agent fee fraud,[9] there is every reason to believe that the SBA intended to maintain this

important anti-fraud safeguard.

## II.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NO RIGHT TO AGENT FEES AND FOR ADDITIONAL REASONS.

Each of Plaintiff's six causes of action depends on the proposition that Plaintiff is entitled

to receive fees from BofA under the CARES Act.  *See supra* at note 5.  Because that is incorrect,

for the reasons shown above, all of Plaintiff's claims fail.  Even assuming for argument's sake

that the CARES Act could be read to support an entitlement to agent fees, Plaintiff's claims still

would fail because Plaintiff lacks a right of action to claim such fees and for additional,

independent reasons specific to each cause of action.

### A.  The CARES Act Does Not Have a Private Right of Action.

"[P]rivate rights of action to enforce federal law must be created by Congress."

*Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  The only courts to address whether the PPP

provisions of the CARES Act provides a private right of action have held that it does not.

*Profiles, Inc. v. Bank of Am. Corp.*, 2020 WL 1849710, at *4, *7 (D. Md. Apr. 13, 2020)

(holding that "the CARES Act does not expressly provide a private right of action" and does not

---

[9] *See* Exhibit 10 ("OIG investigations have revealed a pattern of fraud by loan packagers and other for-fee agents in the 7(a) Loan Program, involving hundreds of millions of dollars" and the SBA has "made substantial progress in developing effective methods to disclose and track loan agent activities on 7(a) program loans" by requiring the completion of Form 159 agreements)"; Exhibit 13 (explaining that the SBA requires disclosure of agent fee agreements to ensure any fees charged to applicants are not "unreasonable or impermissible").

---

impliedly create a private right of action); *see also Sport & Wheat*, 2020 WL 4882416, at *3 n.6 (noting that "it is doubtful that . . . a private right of action exists" under the CARES Act).

As the court in *Profiles* correctly held, Plaintiff cannot meet its "heavy burden" to overcome the "presumption that Congress did not intend" to create an implied private right of action. *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 433 (2d Cir. 2002). The Ninth Circuit (and every other circuit to consider the issue) has held that the Small Business Act—which the CARES Act amends—does not expressly or impliedly create a private right of action. *See Crandal v. Ball, Ball & Brosamer, Inc.*, 99 F.3d 907, 909 (9th Cir. 1996) ("Other circuits that have considered the question have unanimously agreed that the Small Business Act does not create a private right of action in individuals.") (collecting cases). And nothing in the "text and structure" of the CARES Act would suggest, let alone "yield a clear manifestation," that Congress intended to create a private cause of action. *See Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011).

The three factors that the Ninth Circuit considers in assessing whether an implied private right of action exists, *see Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1115 (9th Cir. 2010), confirm this conclusion. *First*, the "language and structure of the" CARES Act contains no suggestion that it intended to create a private right of action. *Id.* The CARES Act contains no "rights-creating language" that "imply Congress intended to confer" a private right of action. *Id.* Indeed, far from creating *rights* for agents, the provision at issue creates a new *restriction* on agents: It prohibits agents from collecting a fee greater than the limits set by the SBA. In addition, Plaintiff "must show that the statute manifests an intent to 'create not just a private *right* but also a private *remedy*.'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Alexander*, 532 U.S. at 286). The CARES Act contains no such language.

*Second*, courts look to the structure of the statute itself—the Small Business Act, as amended by the PPP provisions of the CARES Act—to determine whether any "analogous provisions . . . expressly provid[e] for private causes of action," which can imply that Congress intended not to create a private right of action in other sections. *Northstar*, 615 F.3d at 1115. Here, *no* provision of the Small Business Act confers a private right of action. *See Profiles*, 2020

---

WL 1849710, at *11–13 (collecting authorities finding that "the [Small Business Act] does not

contain an implied right of action" and concluding that the CARES Act does not either).

*Third*, courts look to whether "Congress designated a method of enforcement other than

through private lawsuits." *Northstar*, 615 F.3d at 1115.  The Small Business Act codifies a

robust criminal and civil enforcement regime.  *See, e.g.*, 15 U.S.C. § 650(c); *Northstar*, 615 F.3d

at 1115 (finding that "[t]he express provision of one method of enforcing a substantive rule

suggests that Congress intended to preclude others") (quoting *Sandoval*, 532 U.S. at 290); *see

also Segalman v. Sw. Airlines Co.*, 895 F.3d 1219, 1226 (9th Cir. 2018).

### B.  The Lack of a Private Right of Action Defeats Plaintiff's Declaratory Judgment Claim.

Plaintiff's claim for a declaratory judgment to enforce "PPP Regulations" (Count I),

Compl. ¶ 72, fails in the absence of a private right of action.  The Declaratory Judgment Act

creates no substantive legal rights.  Rather, it authorizes federal courts to "declare the rights and

other legal relations of any interested party seeking such declaration, whether or not further relief

is or could be sought."  28 U.S.C. § 2201(a).  "[T]he operation of the Declaratory Judgment Act

is procedural only."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937).  The "availability

of [declaratory] relief presupposes the existence of a judicially remediable right."  *Schilling v.

Rogers*, 363 U.S. 666, 677 (1960); *Republic of Marsh. Is. v. United States*, 865 F.3d 1187, 1199

n.10 (9th Cir. 2017).  On these principles, similar attempts to invoke the Declaratory Judgment

Act to assert a claim under the CARES Act have been rightly rejected.  *See Profiles*, 2020 WL

1849710, at *7 n.6; *Sport & Wheat*, 2020 WL 4882416, at *4.

### C.  The Lack of a Private Right of Action Defeats Plaintiff's Common-Law Claims.

Lacking a federal cause of action, Plaintiff asserts a grab bag of state common-law claims

(Counts II–V) as a fallback.  But when a plaintiff's suit is "in essence a suit to enforce" a federal

statute lacking a private right of action, it is "incompatible with the statutory regime" to allow

common-law claims predicated on alleged violations of that federal standard.  *Astra USA, Inc. v.*

1   *Santa Clara Cty.*, 563 U.S. 110, 113, 118 (2011); *see id.* ("[A] third-party private contract action

2   [to enforce that obligation] would be inconsistent with . . . the legislative scheme . . . to the same

3   extent as would a cause of action directly under the statute.") (quoting *Grochowski v. Phx.*

4   *Const.*, 318 F.3d 80, 86 (2d Cir. 2003)).  Where a plaintiff lacks a private right of action to bring

5   claims under a federal statute, it cannot use state common-law causes of action to "backdoor" a

6   private right of action.  *See, e.g., Warner v. Wells Fargo Bank, N.A.*, No. SACV 11-00480 DOC,

7   2011 WL 2470923, at *3 (C.D. Cal. June 21, 2011); *Lil' Man in the Boat, Inc. v. City & Cty. of*

8   *San Francisco*, No. 17-CV-00904-JST, 2018 WL 4207260, at *4 (N.D. Cal. Sept. 4, 2018)

9   ("When a plaintiff lacks a private right of action under a particular statute, she cannot argue

10  around that limitation by bootstrapping her cause of action onto an unjust enrichment or

11  declaratory relief claim.").  Plaintiff alleges no independent common-law right to agent fees, but

12  seeks to use common-law claims to enforce alleged violations of federal law for which he has no

13  federal cause of action.  The Court should reject Plaintiff's attempt to use common-law claims to

14  bootstrap his way into a cause of action that the CARES Act does not give him.

### D.  Plaintiff's Common-Law Claims Should Be Dismissed.

#### 1.  Plaintiff's Unjust Enrichment Claim Fails.

17          Under California law, to state a claim for unjust enrichment, Plaintiff must allege "(1) a

18  defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense."

19  *Florey Inst. of Neuroscience & Mental Health v. Kleiner Perkins Caufield & Byers*, 31 F. Supp.

20  3d 1034, 1048 (N.D. Cal. 2014) (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593

21  (Ct. App. 2008)).

22          Plaintiff fails to establish the first element because he does not allege BofA's receipt of "a

23  benefit conferred on defendant *by plaintiff*."  *See Cruz v. United States*, 219 F. Supp. 2d 1027,

24  1041 (N.D. Cal. 2002) (emphasis added).  To the extent Plaintiff contends that BofA received a

25  benefit in the form of PPP lender fees, those fees were paid by the SBA, not by Plaintiff, and any

26  benefit Plaintiff conferred was on the PPP borrower he allegedly assisted.  *Sport & Wheat*, 2020

27  WL 4882416, at *5 (dismissing unjust enrichment claim because plaintiff agent's "indirect

28  conferral of a benefit on Defendants is insufficient to satisfy the first element of a claim for

1    unjust enrichment").  On this basis alone, Plaintiff's unjust enrichment claims must be dismissed.

2    *See Tindell v. Murphy*, 22 Cal. App. 5th 1239, 1254 (Ct. App. 2018) (affirming dismissal where

3    the lender, not the plaintiff purchasers, paid for the appraisal from the defendant).

4        Nor can Plaintiff show that BofA's retention of the fees from the SBA is "unjust."  *Cruz*,

5    219 F. Supp. 2d at 1042 (dismissing unjust enrichment action for failure to show that bank's

6    initial acquisition of deposit money was "wrongful").  To the extent Plaintiff alleges any "unjust"

7    retention, Plaintiff's claim is rooted in the baseless assertion that he is owed fees under the

8    CARES Act.  It is not "unjust" for BofA to retain reimbursements that Congress *specifically*

9    directed that it "shall" receive as compensation for the resources and effort it expended in

10   processing PPP loans, 15 U.S.C. § 636(a)(36)(P)(i), where Plaintiff failed to comply with a

11   regulatory scheme that requires agents, lenders, and applicants to negotiate compensation

12   agreements before agents are entitled to any fees.  *See Davenport v. Litton Loan Servicing, LP*,

13   725 F. Supp. 2d 862, 886 (N.D. Cal. 2010) (dismissing unjust enrichment claim, citing plaintiff's

14   right to rescind her loan under federal and state statutes, where plaintiff failed to validly exercise

15   her rescission right under either statute).

16                   **2.   Plaintiff's Conversion Claim Fails.**

17        To bring an action for conversion under California law, a plaintiff must show: "(1) the

18   plaintiff's ownership or right to possession to the property at the time of conversion; (2) the

19   defendant's conversion by a wrongful act; and (3) damages."  *Ross v. U.S. Bank, N.A.*, 542 F.

20   Supp. 2d 1014, 1023–24 (N.D. Cal. 2008) (citing *Oakdale Village Group v. Fong*, 43 Cal. App.

21   4th 539, 543–44 (Ct. App. 1996)).

22        Plaintiff cannot satisfy the first element of the test, which requires showing he "had actual

23   possession of the property, or the right to immediate possession of the property at the time the

24   alleged conversion occurred."  *Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1409

25   (N.D. Cal. 1992) (citation omitted).  Plaintiff does not allege he had "actual possession" of the

26   fees to which he claims entitlement.  And contrary to the Complaint, Compl. ¶ 84, the agent fees

27   Plaintiff seeks are not the type of property interest to which he could claim a "right to immediate

28   possession."  *United Energy Trading, LLC v. PG&E*, 177 F. Supp. 3d 1183, 1194 (N.D. Cal.

---

2016) (complaint failed to show entitlement to immediate possession because "a mere contractual right of payment, without more, will not suffice") (quotation marks and citation omitted).

California claims for conversion "typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others." *Voris v. Lampert*, 446 P.3d 284, 291 (Cal. 2019) (quotation marks and citation omitted). An example of a case "that fits easily with traditional understandings of the conversion tort" is one that alleges the failure to turn over commissions "which were earmarked for a specific person before being misappropriated and absorbed into another's coffers." *Id.* at 294. This is not such a case. Rather, Plaintiff's claim resembles that rejected by the California Supreme Court in *Voris*, where the plaintiff alleged "that the employer failed to reach into its own funds to satisfy its debt," and "not that the employer has wrongfully exercised dominion over a specifically identifiable pot of money that already belongs to the employee—in other words, the sort of wrong that conversion is designed to remedy." *Id.* Here, Plaintiff alleges not that BofA misappropriated money already belonging to him or held in trust on his behalf, but that he should have been paid fees out of the origination fees duly paid by the government to BofA. This is not a basis for a conversion claim. *See In re Bartoni-Corsi Produce, Inc.*, 130 F.3d 857, 860 (9th Cir. 1997) (no conversion where plaintiffs did not own the funds deposited with the defendant bank). Plaintiff has also failed to establish the second element, any *wrongful* act by BofA, for all the reasons discussed above with respect to the claim for unjust enrichment.

### 3.  Plaintiff's Money Had and Received Claim Fails.

A common-law count for money had and received is a claim for restitution, and may be brought "wherever one person has received money which belongs to another and which in equity and good conscience . . . should be returned." *Hendrickson v. Octagon Inc.*, 225 F. Supp. 3d 1013, 1032 (N.D. Cal. 2016) (quotation marks and citation omitted). The claim "is founded on the unjust enrichment of a defendant by its receipt of a definite sum to which the plaintiff was justly entitled." *Florey Inst. of Neuroscience & Mental Health v. Kleiner Perkins Caufield & Byers*, 31 F. Supp. 3d 1034, 1046 (N.D. Cal. 2014).

Like his unjust enrichment and conversion claims, Plaintiff's claim for money had and received requires a finding that BofA received and unfairly retained fees that belong to Plaintiff. But, as described above, no portion of the origination fees BofA received from the SBA belongs to Plaintiff; as such, this claim too must be dismissed. *See King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 870 (N.D. Cal. 2019) (a common count for money had and received is not a specific cause of action and rises and falls with the underlying equitable claims). Specifically, Plaintiff is not "justly entitled" to fees as a self-declared agent in the absence of a pre-loan-approval written agreement with BofA. Nor can he show "equity and good conscience" require payment of fees where he failed to comply with the SBA's policies to combat fraud in accordance with longstanding SBA regulations.

Plaintiff's claim fails for a second reason: "An action for money had and received is predicated upon the theory that the defendant has received money which in fact belongs to the plaintiff, and as to the ownership of which the defendant *never at any time had any interest*." *United States v. Elliott*, 205 F. Supp. 581, 585 (N.D. Cal. 1962) (emphasis added); *see also Ray v. BlueHippo Funding, LLC*, No. C06-01807 JSW, 2008 WL 1995113, at *7 (N.D. Cal. May 6, 2008) (dismissing claim for money had and received where there was no allegation Defendant directly received any money from Plaintiff). No claim can be stated where, as here, facts are not alleged to show that Plaintiff had a "proprietary interest" in the money at the time of receipt, or that the money was received "in trust" for the Plaintiff. *Elliot*, 205 F. Supp. at 584. By Plaintiff's own account, the agent fees do not constitute money in which BofA "never at any time had any interest" or in which Plaintiff had a "proprietary interest" at the time of receipt. Rather, BofA duly received origination fees owed to it under the CARES Act, and it is from those fees Plaintiff demands payment for services allegedly rendered to borrowers. Compl. ¶ 91. This money is not properly the subject of a claim for money had and received. *Id.* at 585 (dismissing claim for money had and received where complaint alleges agreements to pay Plaintiffs money as "compensation" or "commissions").

### 4.   Plaintiff's Breach of Contract – Third Party Beneficiary Claim Fails.

Plaintiff alleges that he may enforce the PPP regulations' purported mandate that lenders pay agent fees as intended third-party beneficiaries to the "CARES Act Section 1102 Lender Agreement."  Compl. ¶¶ 103–05.  That four-page form agreement between PPP lenders and the SBA makes no reference to agents or agent fees but sets forth the parties' respective obligations under the PPP and incorporates the PPP regulations by reference.  Exhibit 11.  *See* Compl. ¶¶ 101–02.

In California, only "intended beneficiaries" who are "more than incidentally benefitted by the contract" may enforce its terms.  *Fishman v. Tiger Nat. Gas, Inc.*, No. C 17-05351 WHA, 2018 WL 2552597, at *2 (N.D. Cal. June 4, 2018) (quoting *Shell v. Schmidt*, 126 Cal. App. 2d 279, 290 (Ct. App. 1954)).  To qualify as an intended beneficiary, "a person seeking to enforce a contract as a third party beneficiary must plead a contract which was made *expressly* for his or her benefit and one in which it *clearly* appears that he or she was a beneficiary."  *Id.  See also* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.").  As used in this context, "expressly" means "in an express manner; in direct or unmistakable terms; explicitly; definitely; directly."  *In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 WL 4020104, at *6 (N.D. Cal. Nov. 19, 2009) (construing Cal. Civ. Code § 1559).  And an even "more stringent test" applies to alleged third-party beneficiaries seeking to recover under government contracts because "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."  *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (quotation marks and citation omitted).

Plaintiff alleges no facts overcoming the assumption he is at best an incidental beneficiary and points to no language in the Lender Agreement that would support "clear intent" to permit his enforcement of it.  To the contrary, the Lender Agreement includes language that "evinces an intent to limit intended beneficiaries to the contracting parties," *Jafari v. FDIC*, No. 12CV2982-LAB RBB, 2015 WL 3604443, at *6 (S.D. Cal. June 8, 2015), where it states, "[t]his Agreement will inure to the benefit of, and be binding upon, the Lender's authorized successors

---

1    and assigns," Exhibit 11.  The Ninth Circuit has held that similar language—"This contract binds

2    and inures to the benefit of the parties hereto, their successors and assigns"—indicates "the intent

3    of the parties to limit intended beneficiaries to the contracting parties."  *Klamath Water Users*

4    *Protective Ass'n v. Patterson*, 204 F.3d 1206, 1212 (9th Cir. 1999).

5           Plaintiff's argument that he may enforce the Lender Agreement as an intended

6    beneficiary because it incorporates the PPP regulations is unavailing.  Where, as here, Congress

7    did not provide a private right of action to enforce putative rights under a statute, a nonparty may

8    not sue as an intended third-party beneficiary to a federal government contract that "simply

9    incorporate[s] statutory obligations and record[s] the . . . agreement to abide by them."  *Astra*

10   *USA, Inc.*, 563 U.S. at 117–18 (holding plaintiffs could not bring breach of contract claim as

11   third-party beneficiaries under form contract that allegedly incorporated language regarding

12   implementation of a statutorily-created federal program); *see also Rodriguez v. Sony Computer*

13   *Entm't Am. LLC*, No. C 11-4084 PJH, 2012 WL 4464563, at *3 (N.D. Cal. Sept. 25, 2012), *aff'd*,

14   801 F.3d 1045 (9th Cir. 2015) (plaintiff without private remedy under federal statute "cannot

15   bring the same substantive claim dressed in 'breach of contract' clothing").

16          **E.  Plaintiff's Unfair Competition Law Claim Fails.**

17          Plaintiff alleges BofA violated the "unlawful" prong of the California Unfair Competition

18   Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. (Count VI), by failing to pay agent fees

19   allegedly prescribed by the PPP regulations.  *See* Compl. ¶¶ 107–15.  This claim, too, should be

20   dismissed.  While a "violation of another law is a predicate for stating a cause of action under the

21   UCL's unlawful prong," *Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 610 (Ct. App.

22   2014) (quotation marks and citation omitted), for reasons already stated, BofA has not violated

23   the CARES Act or its implementing regulations.  Nor can common-law claims form the basis for

24   a claim under the "unlawful" prong of § 17200.  *Shroyer v. New Cingular Wireless Servs., Inc.*,

25   622 F.3d 1035, 1044 (9th Cir. 2010) (affirming dismissal of claim under the unlawful prong of §

26   17200 for failure to go beyond alleging a violation of common-law because the disputed practice

27   must be "forbidden by law" that is "civil or criminal, federal, state, or municipal, statutory,

28   regulatory, or court-made").  Because Plaintiff has not stated any predicate unlawful business

1  practices, his UCL claim fails.  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018)

2  (dismissing claim alleged under "unlawful" prong of UCL as dependent on an unsuccessful

3  allegation of statutory violation).

4        Lastly, remedies under the UCL are "limited to injunctive relief and restitution," and

5  Plaintiff is entitled to neither.  *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL

6  3910169, at *7 (N.D. Cal. Oct. 5, 2010).  Because the PPP has now concluded, there is no future

7  conduct to enjoin, and because, for the reasons described above, Plaintiff "never had an

8  ownership interest" in the fees he seeks, his request is not for restitution but for

9  "nonrestitutionary disgorgement of profits" unavailable under the UCL.  *See Shersher v.*

10  *Superior Court*, 154 Cal. App. 4th 1491, 1497 (Ct. App. 2007).

11  **CONCLUSION**

12        For the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  **[SIGNATURE ON NEXT PAGE]**

28

Dated: September 14, 2020

**BROWN LAW GROUP**

By:   */s/ Janice P. Brown*

Janice P. Brown (SBN 114433)
Arlene R. Yang (SBN 297450)
600 B Street, Suite 1650
San Diego, CA 92101
Tel. 619-330-1700
Fax 619-330-1701
brown@brownlawgroup.com
yang@brownlawgroup.com

**WILLIAMS & CONNOLLY LLP**

Enu A. Mainigi
(pro hac vice)
Kenneth C. Smurzynski
(pro hac vice)
Craig D. Singer
(pro hac vice)
Jesse T. Smallwood
(pro hac vice)
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel. 202-434-5000
Fax 202-434-5029
emainigi@wc.com
ksmurzynski@wc.com
csinger@wc.com
jsmallwood@wc.com

Attorneys for Defendant
*Bank of America, N.A.*

---