United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRANCIS LOPEZ,

Plaintiff,

v.

BANK OF AMERICA, N.A.,

Defendant.

Case No. 20-cv-04172-JST

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 28

Bookkeeper Francis Lopez brings this lawsuit against Bank of America, N.A. ("BANA") on behalf of a putative class. He claims that he and others like him are entitled to receive agent's fees for providing assistance to businesses that received Paycheck Protection Program ("PPP") loans funded by BANA and guaranteed by the Small Business Administration ("SBA").

BANA now moves to dismiss Lopez's complaint on the ground that neither the PPP nor any other statutory or common law rule provides a right to the agent fee Lopez is seeking. ECF No. 28. As set forth below, the Court will grant the motion.

I.      **BACKGROUND**

    A.      **Statutory and Regulatory Background**

        The PPP at the center of this case was enacted as part of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), which Congress passed in March 2020 to provide relief to the American economy during the COVID-19 pandemic. Complaint ("Compl."), ECF No. 1 ¶¶ 1-2; *see also* Pub. L. 116-136, 134 Stat. 281 (2020). The purpose of the PPP was to provide financial assistance to small businesses and other concerns to keep them afloat during the economic downturn. Compl. ¶ 2; *see also* Pub. L. 116-136, § 1102, 134 Stat. at 286 (codified at 15 U.S.C. § 636(a)(36) (2020)).

Congress didn't create the PPP from whole cloth.  Rather, it "temporarily add[ed] a new product, titled the 'Paycheck Protection Program,' to the U.S. Small Business Administration's (SBA's) [existing] 7(a) Loan Program."  Business Loan Program Temporary Changes; Paycheck Protection Program Interim Final Rule (the "SBA Rule"), 85 Fed. Reg. 20811 (Apr. 15, 2020).  Understanding the PPP therefore requires a brief overview of the SBA's 7(a) Loan Program.

### 1.      The SBA's Section 7(a) Small Business Loan Program

Congress passed the Small Business Act of 1953 to ensure the sustainability of the "American economic system of private enterprise," including "free markets, free entry into business, and opportunities for the expression and growth of personal initiative and individual judgment."  Pub. L. 83-163, 67 Stat. 232 (1953) (codified at 15 U.S.C. § 631(a)).  The Small Business Act created the SBA, with the declared policy that "the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns."  *Id.*; *see also* 15 U.S.C. § 633(a).  Through the Act, Congress gave the SBA "extraordinarily broad powers," including the authority to "lend[] money to small businesses whenever they could not get necessary loans on reasonable terms from private lenders."  *Small Bus. Admin. v. McClellan*, 364 U.S. 446, 447 (1960).

Section 7(a) loans are the core of this program.  "Section 7(a) of the Small Business Act . . . permits extension of financial assistance to small businesses when funds are 'not otherwise available on reasonable terms from non-Federal sources.'"  *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 n.3 (1979).  "Such financings may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed) basis," subject to certain conditions.  15 U.S.C. § 636(a); *see also* 13 C.F.R. § 120.2(a).

Pursuant to SBA regulation, a small business applicant may be eligible for an SBA business loan if it is an operating business organized for profit, located in the United States, that satisfies certain size requirements and demonstrates "a need for the desired credit."  13 C.F.R. § 120.100.  A small business applicant may apply either to the SBA for a direct loan or to a lender for a guaranteed or immediate participation loan.  *Id.* § 120.190.  Lenders are restricted in the type

United States District Court
Northern District of California

1    and amount of fees they may collect from a loan applicant.  *Id.* § 120.221.

2         No small business is ever required to use an agent or other intermediary to conduct

3    business with the SBA.  *Id.* § 103.2(a) ("If you are an Applicant, a Participant, a partner of an

4    Applicant or Participant partnership, or serve as an officer of an Applicant, Participant

5    corporation, or limited liability company, you may conduct business with SBA without a

6    representative.").  But an SBA loan applicant may utilize the assistance of an agent if it wishes,

7    subject to any other requirements of law.  *Id.* § 103.2(b).  An "agent" is defined as an "authorized

8    representative, including an attorney, accountant, consultant, packager, lender service provider, or

9    any other individual or entity representing an Applicant or Participant by conducting business with

10   SBA."  *Id.* § 103.1.  A small business applicant must "certify to the Administration the names of

11   any attorneys, agents, or other persons engaged by or on behalf of such business enterprise for the

12   purpose of expediting applications made to the Administration for assistance of any sort, and the

13   fees paid or to be paid to any such persons."  15 U.S.C. § 642; *see also* 13 C.F.R. § 120.195 ("An

14   Applicant for a business loan must identify to SBA the name of each Agent . . . that helped the

15   applicant obtain the loan, describing the services performed, and disclosing the amount of each fee

16   paid or to be paid.").  Additionally, the SBA may require the agent to "supply written evidence of

17   his or her authority to act on behalf of an Applicant, Participant, or lender."  13 C.F.R. § 103.2(b).

18        If a small business applicant receives an agent's help in submitting its loan application,

19   regulations dictate how that agent may be compensated.  *See* 13 C.F.R. § 103.5.  First, an agent

20   "must execute and provide to SBA a compensation agreement," which "governs the compensation

21   charged for services rendered or to be rendered to the Applicant or lender in any matter involving

22   SBA assistance."  *Id.* § 103.5(a).  The SBA "provides the form of compensation agreement and a

23   suggested form of Lender Service Provider agreement to be used by Agents."  *Id.*  This form is the

24   SBA Form 159 Fee Disclosure and Compensation Agreement, which is used to "identify Agents

25   and the fees and/or compensation paid to Agents by or on behalf of a small business applicant."

26   ECF No. 28-4 at 2; *see also* https://www.sba.gov/document/sba-form-159-fee-disclosure-

27   compensation-agreement (downloadable form) (last visited Dec. 2, 2020).  The form "must be

28   completed and signed by the SBA Lender and the Applicant whenever an Agent is paid by either

United States District Court
Northern District of California

the Applicant or the SBA Lender in connection with the SBA loan application."  ECF No. 28-4 at

2.  Completing the form takes five minutes.  *Id.* at 3 ("The estimated burden for completion of this

form is 5 minutes per response.").

Second, regulations limit the amount an agent can collect for his or her services:

> Total compensation charged by an Agent or Agents to an Applicant
> for services rendered in connection with obtaining an SBA-
> guaranteed loan must be reasonable.  In cases where an Agent or
> Agents charge any fee to an Applicant in excess of those specified in
> this part, the Agent(s) must reduce the charge and refund to the
> Applicant any amount in excess of the fee permitted by SBA.  SBA
> considers the following amounts to be reasonable for the total
> compensation that an Applicant can be charged by one or more
> Agents:
>
> (1) For loans up to and including $500,000: A maximum of 3.5
>     percent of the loan amount, or $10,000, whichever is less;
>
> (2) For loans $500,001-$1,000,000: A maximum of 2 percent of the
>     loan amount, or $15,000, whichever is less; and
>
> (3) For loans over $1,000,000: A maximum of 1.5 percent of the loan
>     amount, or $30,000, whichever is less.

13 C.F.R. § 103.5(b).  Form 159 requires itemization and supporting documentation if the

compensation paid to the agent exceeds $2,500.  ECF No. 28-4 at 3.

### 2.    The CARES Act and the PPP

The CARES Act was an approximately $2 trillion stimulus bill, authorized by Congress on

March 25, 2020 and signed by the President on March 27, 2020, in response to urgent requests

from state and local governments, businesses, and individuals impacted by the economic

consequences of the COVID-19 pandemic.  Compl. ¶ 24.  One part of the Act, the PPP, authorized

$659 billion for a small business loan program.  *Id.* ¶ 25.  The PPP amended the Small Business

Act at 15 U.S.C. § 636(a)(36) providing for a "new 7(a) loan program."  85 Fed. Reg. at 20811-12

("Section 1102 of the Act temporarily add[ed] a new product, titled the 'Paycheck Protection

Program,' to the [SBA's] 7(a) Loan Program.").  The intent of these provisions was to "provide

relief to America's small businesses expeditiously, which is expressed in the Act by giving all

lenders delegated authority and streamlining the requirements of the regular 7(a) loan program."

*Id.* at 20812.

4

Loans issued under the PPP are guaranteed by the SBA "under the same terms, conditions, and processes" as any other Section 7(a) loan, unless "otherwise provided" by the Act.  15 U.S.C. § 636(a)(36)(B).  A key aspect of the PPP is that lenders received guaranteed fees, calculated based on the size of the loan, in order to secure lender participation in the program.  *See* Compl. ¶ 28; 15 U.S.C. § 636(a)(36)(P)(i) ("The Administrator shall reimburse a lender authorized to make a covered loan at a rate, based on the balance of the financing outstanding at the time of disbursement of the covered loan").

The word "agent" appears only twice in the PPP provisions of the CARES Act.  First, the PPP's provisions adjust the permissible amount of an agent's fee, explaining that "[a]n agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator."  15 U.S.C. § 636(a)(36)(P)(ii).  Second, the statute states that:

> It is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 637(d)(3)(C) of this title), women, and businesses in operation for less than 2 years.

On April 15, 2020, the SBA issued the SBA Rule to implement Sections 1102 and 1106 of the CARES Act.  85 Fed. Reg. at 20811.  It is express in the Rule that "[t]he program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10)."  *Id.* at 20812.  The SBA Rule "outlines the key provisions of the PPP" in Question and Answer format, answering anticipated questions such as "What do borrowers need to know and do?" and "What do lenders need to know and do?"  *Id.* at 20812, 20815.  The guidance "applies to applications submitted under the [PPP] through June 30, 2020, or until funds made available for this purpose are exhausted."  *Id.* at 20811.

The application process requires a loan applicant to submit "SBA Form 2483 (Paycheck Protection Program Application Form) and payroll documentation."  *Id.* at 20814; *see also* ECF No. 28-6.  The application form also requires certifications concerning the applicant business, the

necessity for the loan request, the anticipated use of funds, and general attestations as to the accuracy of the information submitted. 85 Fed. Reg. at 20814. In addition, the lender must submit "SBA Form 2484 (Paycheck Protection Program Lender's Application for 7(a) Loan Guaranty) electronically in accordance with program requirements and [must] maintain the forms and supporting documentation in its files." *Id.* at 20814; *see also* ECF No. 28-7.

In the section of the SBA Rule addressing the question "What do both borrowers and lenders need to know and do?" the Rule first discusses the loan terms and conditions, and then answers the question of whether there are any fee waivers. *Id.* at 20816. Only then does the SBA Rule address agents and agent fees, as follows:

> **Who pays the fee to an agent who assists a borrower?**
>
> Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:
>
> (i)     One (1) percent for loans of not more than $350,000;
> (ii)    0.50 percent for loans of more than $350,000 and less than $2 million; and
> (iii)   0.25 percent for loans of at least $2 million.
>
> The Act authorizes the Administrator to establish limits on agent fees. The Administrator, in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans.

*Id.* (boldface in original). These provisions contain the only mentions of the word "agent" anywhere in the SBA Rule.

In addition to the SBA Rule, the SBA also issued a "Paycheck Protection Program (PPP) Information Sheet" for Lenders. Compl. ¶ 34; ECF No. 28-11. The Information Sheet addressed the lender eligibility and requirements for PPP participation. ECF No. 28-11 at 2-3. It also explains who is authorized to act as an "agent" under the PPP and how such agents can be compensated, mirroring the requirements outlined in the SBA Rule. *Id.* "Agent fees will be paid out of lender fees. The lender will pay the agent. Agents may not collect any fees from the applicant. The total amount that an agent may collect from the lender for assistance in preparing

United States District Court
Northern District of California

an application for a PPP loan (including referral to the lender) may not exceed [limits identified in the SBA Rule]." *Id.* at 3.

### B.     Factual and Procedural Background

Plaintiff Francis Lopez is a sole proprietor operating FMS Accounting, a bookkeeping firm in Daly City, California.  Compl. ¶ 44.  On April 3, 2020, Lopez assisted one of his small business clients with research about the process for applying for a PPP loan under the CARES Act.  *Id.* ¶¶ 45-46.  On April 7, 2020, Mr. Lopez helped his client apply for a loan by compiling the client's payroll information, reviewing the numbers to determine the appropriate loan amount, and filling out the BANA PPP loan application based on the information he gathered.  *Id.* ¶ 47.  BANA required Lopez's client to submit the PPP application through BANA's online portal, which did not provide a field to identify whether an agent had assisted with the application.  *Id.* ¶¶ 48-49.  His client received a PPP loan in the amount of $70,243.00.  *Id.* ¶ 50.  Lopez did not enter into a compensation agreement with BANA.  Nonetheless, he contends that he is "entitled to an Agent Fee of $702.43" to be paid by BANA out of its origination fee.  *Id.* ¶ 51.  Lopez has not received such compensation, and he explains that he likely will not be compensated based on "Bank of America's policy . . . to deny Agents the fees to which they are entitled."  *Id.* ¶¶ 51-52.  This policy, stated on BANA's website, explains that "[i]n the absence of a pre-loan approval written agreement between the agent and Bank of America, Bank of America does not pay fees or other compensation to agents who represent or assist borrowers through the Paycheck Protection Program."  Compl. ¶ 39; *see also* ECF 28-8 at 5.

Lopez seeks to represent a class of persons who served as agents for PPP loan applicants that received PPP loans through BANA but who were not paid Agent Fees.  Compl. ¶ 55.  The complaint brings four causes of action against BANA.  Count 1 seeks declaratory relief under 28 U.S.C. § 2201 stating that "Defendant is obligated to set aside money to pay, and to pay, agents in accordance with PPP Regulations for work performed on behalf of a client in relation to the preparation and/or submission of a PPP loan application that resulted in a funded PPP loan."  *Id.* ¶ 72.  Count 2 seeks restitution under an unjust enrichment theory, contending that Defendant would be unjustly enriched if permitted to "retain the Agent Fees owed to Plaintiff and the Class

1   Members under the PPP Regulations and SBA guidance." *Id.* ¶ 78.  Count 3 (conversion), Count

2   4 (money had and received), and Count 5 (breach of contract – third party beneficiary) seek to

3   recover the amounts that putative class members contend they are entitled to "as Agent Fees under

4   the PPP Regulations." *Id.* ¶¶ 80-106.  Finally, Count 6 alleges violation of California's Unfair

5   Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200, based on BANA's "unlawful"

6   "policy and practice of not paying Agent Fees to Plaintiff and the Class Members," and seeks

7   "monies owed" and an injunction pursuant to that statute.  Compl. ¶ 112.

8        On September 14, 2020, BANA moved to dismiss the complaint for failure to state a claim

9   upon which relief can be granted.  ECF No. 28.  Lopez submitted an opposition, ECF No. 36, and

10  BANA replied, ECF No. 37.  The Court heard argument on December 2, 2020.

## II.    JURISDICTION

12       The Court has jurisdiction over this putative class action pursuant to 28 U.S.C.

13  § 1332(d)(2) because the amount in controversy exceeds $5 million and at least one member in the

14  proposed class of over 100 members is a citizen of a state different from BANA.[1]

## III.   REQUESTS FOR JUDICIAL NOTICE

16       "Ordinarily, the court considers only the complaint and documents attached thereto in

17  deciding a motion to dismiss; however, the court may also take judicial notice of matters of public

18  record."  *Chavez v. City of California*, No. 1:19-cv-00646-CAC-JLT, 2020 WL 1234503, at *3

19  (E.D. Cal. Mar. 13, 2020) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.

20  2001)).  Under Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not

21  subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

22  jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

23  reasonably be questioned."  Under Rule 201(d), "[t]he content of records and reports of

24  administrative bodies are proper subjects for judicial notice."  *Dillingham v. Garcia*, No. 1:19-cv-

25  00461-AWI-GSA-PC, 2019 WL 2577196, at *1 (E.D. Cal. June 24, 2019) (citing *Interstate Nat.*

26  *Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).  On a motion to dismiss, the court

27

28  _____

[1] Lopez is a resident and citizen of California, and BANA is a citizen of North Carolina.  Compl.
¶¶ 16-17.

may also "consider materials incorporated into the complaint" when "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  This is true even if "the plaintiff does not explicitly allege the contents of that document in the complaint."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). However, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed."  *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F.Supp.3d 1029, 1038 (N.D. Cal. 2017).

Defendant requests that the Court take judicial notice of: (1) a transcript from the House Financial Services Committee's Hearing on Oversight of the Treasury Department's and Federal Reserve's Pandemic Response, dated June 30, 2020, (2) four sets of SBA forms and applications for lenders, borrowers, and agents, obtained from government websites, (3) an audit report titled "SBA Needs to Improve its Oversight of Loan Agents," and an Inspector General report titled "Report on the Most Serious Management and Performance Challenges Facing the Small Business Administration in Fiscal Year 2019," which are available on the SBA website, (4) the Paycheck Protection Program (PPP) Information Sheet – Lenders, which is available on the U.S. Department of the Treasury's official website, (5) selected portions of the SBA Standard Operating Procedure (SOP) 50 10 K, which can be found on the SBA's website, (6) a document titled "CARES Act Paycheck Protection Program: Frequently Asked Questions," which is available on BANA's website, and (7) two reports issued by the American Institute of Certified Public Accountants' ("AICPA") Center for Plain English Accounting.  ECF No. 28-1.  Plaintiff does not oppose Defendant's request.

"Because of their perceived reliability, courts have often admitted records taken from websites maintained by government agencies."  *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018).  Likewise, "[a] government agency's records will often be judicially noticeable because they are public records."  *Id.*  Accordingly, Defendant's requests for judicial

9

1    notice of the SBA forms and applications, audit and Inspector General reports, PPP Lender

2    Information Sheet, and SOP 50 10 K are granted.  The same presumption of reliability is not

3    available to the websites of private parties.  However, because BANA's CARES Act PPP FAQ is

4    relied upon in Plaintiff's complaint, Compl. ¶ 12, the request for judicial notice of this exhibit is

5    granted under the "incorporation by reference" doctrine.  *See Knievel*, 393 F.3d at 1076.  In

6    general, courts may take judicial notice of publicly available congressional records, including

7    transcripts of congressional hearings, *see, e.g., Teledyne Risi, Inc. v. Martin-Baker Aircraft Co.*

8    *Ltd.*, No. CV 15-07936 SJO (GJSx), 2016 WL 3212162, at *3 n.1 (C.D. Cal. Apr. 8, 2016);

9    *Herships v. Cantil-Sakauye*, No. 17-cv-00473-YGR, 2017 WL 2311394, at *2 (N.D. Cal. May 26,

10   2017), *aff'd*, 710 F. App'x 331 (9th Cir. 2018); Fed. R. Evid. 201(b)(1), so the Court takes judicial

11   notice of the House Financial Services Committee Hearing Transcript.  Lastly, the Court will also

12   take judicial notice of the two reports issued by AICPA, as no indication has been given to dispute

13   their reliability or accuracy.  In short, each of Defendant's requests for judicial notice are granted.

14         Plaintiff has submitted a variety of materials with his opposition for which he has not

15   requested judicial notice.  These materials include: (1) a document titled "Guide to SBA

16   Programs," (2) a document titled "Paycheck Protection Program (PPP) Information Sheet –

17   Lenders," (3) a document titled "Steps in the Life of an SBA Loan," (4) two blog posts, one titled

18   "How Long Does It Take To Get An SBA Loan Approved?" dated October 16, 2018, and the

19   other titled "SBA Loans: What You Need to Know" dated April 21, 2020, (5) a document titled

20   "Chapter 2 – Loan Closing," and (6) the entirety of the SBA Standard Operating Procedure (SOP)

21   50 10 K.  *See* ECF Nos. 36-1, 36-2, 36-3, 36-4, 36-5, 36-6, 36-7.

22         BANA already sought, and the Court granted, judicial notice of certain of these materials:

23   the PPP Lender Information Sheet and portions of the SOP 50 10 K.  The Court takes judicial

24   notice sua sponte of the entirety of the SOP 50 10 K document, which is a public record.  *See* Fed.

25   R. Evid. 201; *Rollins*, 338 F. Supp. 3d at 1032 (explaining that courts often take judicial notice of

26   records maintained on government agency websites); Fed. R. Evid. 106 ("If a party introduces all

27   or part of a writing or recorded statement, an adverse party may require the introduction, at that

28   time, of any other part – or any other writing or recorded statement – that in fairness ought to be

considered at the same time."). The Court will also take judicial notice sua sponte of the document titled "Steps in the Life of an SBA Loan," as it is clear on the face of the document – and the Court has independently confirmed – that it comes from a government agency website. *See Rollins*, 338 F. Supp. 3d at 1032. The Court will also take judicial notice of Exhibit F, the Loan Closing Checklist, because the Court has confirmed that this document is publicly available on the SBA website. *See* https://www.sba.gov/node/4950 (last visited Dec. 2, 2020). The Court declines to take notice of or consider the remaining exhibits Plaintiff included with his opposition, because, without the benefit of a motion explaining the materials, the Court can only speculate as to their reliability.

## IV.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## V.    DISCUSSION

### A.    Declaratory Judgment Claim

BANA argues that Lopez fails to state a claim for declaratory judgment on two grounds. First, BANA argues that neither the CARES Act nor the SBA Rule entitles an agent to fees from a lender in the absence of a written fee agreement with that lender. ECF No. 28 at 16. Second, BANA argues that the PPP provisions of the CARES Act do not provide for a private right of

action.  *Id.* at 23.  The Court agrees with BANA on both fronts.

### 1.    Agent Fees Under the CARES Act

Lopez seeks a declaration that BANA "is obligated to set aside money to pay, and to pay, agents in accordance with PPP Regulations for work performed on behalf of a client in relation to the preparation and/or submission of a PPP loan application that resulted in a funded PPP loan." Compl. ¶ 72.  He contends that "[t]he PPP provides for agents to receive fees for assisting borrowers with PPP applications, and mandates that these fees must come from the fees paid to lenders."  ECF No. 36 at 11.  Lopez rests this argument almost entirely on a fragment of language from the SBA Rule that, he argues, "definitively confirms that '[a]gent fees *will be paid by the lender* out of the fees the lender receives from SBA.'"  *Id.* at 11-12 (emphasis added by Lopez, quoting 85 Fed. Reg. at 20811).  For several reasons, this argument is unavailing.

First, the PPP statute itself simply does not provide for the affirmative payment of agent's fees.  It merely establishes that there can be a ceiling on the amount of such fees if they are collected.  *See* 15 U.S.C. § 636(a)(36)(P)(ii) (providing only that "[a]n agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator").  Had Congress wanted to create a mandatory fee structure, it could easily have done so.  *Serv. Employees Int'l Union v. United States*, 598 F.3d 1110, 1113 (9th Cir. 2010) ("The word 'shall' is ordinarily '[t]he language of command.'" (citation omitted)).  But it did not.

Second, Lopez makes much of the word "will" in the statement that "Agent fees will be paid by the lender out of the fees the lender receives from the SBA."  85 Fed. Reg. at 20816. "Thus," he emphasizes, "the [SBA Rule] does not state that agents *may* be paid fees, but rather that they *will* be paid fees out of the lender fees and then [the Rule] places a limit on the amount of those fees."  ECF No. 36 at 12.  But Lopez takes the quote out of context.  The statement in question is not about *whether* fees "will be paid," but, rather, *by whom* they will be paid.  The Rule distinguishes the loan funds available to the borrower and the fees paid to the lender and provides that agent fees will come "out of the fees the lender receives from the SBA."  85 Fed. Reg. at 20816.  It does not mandate the payment of such fees in the first place.

United States District Court
Northern District of California

1    Third, Lopez's argument contravenes other provisions of the Small Business Act.

2    Congress provided that absent new requirements mandated by the CARES Act or the SBA Rule,

3    PPP loans are guaranteed by the SBA "under the same terms, conditions, and processes" as any

4    other Section 7(a) loan.  15 U.S.C. § 636(a)(36)(B).  Likewise, the PPP program requirements

5    supersede only those "conflicting" requirements from the 7(a) loan program.  85 Fed. Reg. at

6    20812.  As relevant here, the Section 7(a) Loan Program requires that an agent prepare and submit

7    a compensation agreement that identifies the fees which the agent will charge for his services, a

8    requirement generally accomplished through the completion of Form 159.  *See* 13 C.F.R.

9    § 103.5(a).  But Lopez does not allege that he completed and submitted Form 159 or otherwise

10   reached a written agreement with BANA for the payment of a fee.  Thus, he is not entitled to a fee.

11   Lopez argues that Form 159 is "irrelevant" and "demonstrably inapplicable to the PPP."  ECF No.

12   36 at 17.  First, he says that Form 159 conflicts with PPP requirements because the SBA Rule

13   identifies required application forms and does not list Form 159.  *Id.*  However, the SBA Rule

14   identifies only the forms which must be completed by applicants and lenders, and does not address

15   the subject of agent forms.  85 Fed. Reg. at 20814.  Because there is no conflict with an agent's

16   preexisting obligation under 13 C.F.R. § 103.5(a) to "execute and provide to SBA a compensation

17   agreement," that obligation remains in effect.  Second, Lopez argues that Form 159 contemplates

18   that an applicant might pay the agent's fee, which contravenes the SBA Rule.  ECF No. 36 at 17.

19   But again, there is no conflict.  The form states that it "must be completed and signed by the SBA

20   Lender and the Applicant whenever an Agent is paid by *either* the Applicant *or the SBA Lender* in

21   connection with the SBA loan application."  ECF No. 28-4 at 2 (emphasis added).  In other words,

22   the Form can be used for both PPP loans and other Section 7(a) loans.  Lastly, Lopez points out

23   that Form 159 "invokes . . . SBA's Standard Operating Procedure 50 10," which "focuses on a

24   particular type of agent: third-party vendors affiliated with the lenders themselves."  ECF No. 36

25   at 18 (quotations omitted).  He contends that this reference indicates that the "central purpose of

26   Form 159" is to "avoid[] conflicts of interest involving lender-affiliated agents."  *Id.*  However, the

27   same sentence in Form 159 also refers to 13 C.F.R. Part 103, which applies to any agent – not just

28   lender-affiliated agents.  *See* 13 C.F.R. § 103.1(a) (defining "agent" as "an authorized

representative, including an attorney, accountant, consultant, packager, lender service provider, or any other individual or entity representing an Applicant or Participant by conducting business with SBA"). In short, none of Lopez's arguments show that the SBA Rule conflicts with either Form 159 specifically or the requirement to execute a compensation arrangement more broadly.[2] *See Johnson v. JPMorgan Chase Bank, N.A.*, No. CV-20-4100 (JSRx), 2020 WL 5608683, at *7 n.16 (S.D.N.Y. Sept. 21, 2020) ("[E]ven if plaintiffs were correct that this particular form is inapplicable to the PPP, that would not itself dispose of the requirement that agents and lenders enter into an agreement in order for agents to receive fees.").

Lopez's remaining arguments that the SBA Rule conflicts with existing Section 7(a) requirements fare no better. Lopez points out that "[t]he differences between the PPP and standard 7(a) loan programs are legion," including the payment of fees by the SBA to lenders and the payment of guarantee fees to the SBA. ECF No. 36 at 14. From these differences, he asks the Court to conclude that because lenders receive fees under the PPP but not in connection with other SBA loans, lenders must be obligated to pay agent's fees. *See id.* ("[T]he 7(a) program does not require that lenders pay agents out of the fees the lender receives (because there are none), while the PPP mandates just that."). The conclusion doesn't follow from the premise: just because Congress provided for lender's fees under the PPP doesn't mean it required the lenders to pay agent's fees. Lastly, Lopez contends that existing 7(a) procedures, which involve "no fewer than *fourteen* steps a borrower must complete before receiving a standard 7(a) loan," are "irreconcilable with the PPP's 'overarching focus on keeping workers paid and employed.'" ECF No. 36 at 14 (citing 85 Fed. Reg. at 20814) (emphasis in original). However, by its own terms, the SBA Rule supplants only the requirements that conflict with other 7(a) rules. 85 Fed. Reg. at 20812. As it

---

[2] At the hearing on this motion, Plaintiff raised an argument for the first time that since the lender, but not the agent, is required to complete Form 159 when the agent's fee is paid by the lender, Congress must not have intended to require submission of the form in connection with PPP loans. The Court ordinarily declines to consider arguments made for the first time at a motion hearing. *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1168 n.84 (C.D. Cal. 2013). In any event, whether it was Form 159 or something else, Lopez was still required to submit a written compensation agreement to the SBA. 13 C.F.R. § 103.5.

1    must, the Court assumes that Congress meant what it said when it left the remaining 7(a) loan

2    procedures in place.  *Pettis ex rel. U.S. v. Morrison-Knudsen Co.*, 577 F.2d 668, 672 (9th Cir.

3    1978) ("[D]ischarge of our obligation to follow the intent of Congress requires that we assume that

4    Congress said what it meant and meant what it said.").

5         Lopez also makes a series of equitable arguments.  He explains that the CARES Act

6    generally and the PPP specifically were enacted expedite relief to small businesses during

7    unprecedented economic circumstances.  ECF No. 36 at 19; Compl. ¶ 1.  He argues that, based on

8    this need for "alacrity," the law should not require the laborious pre-approval of agent

9    compensation prior to the submission of a client's loan application.  ECF No. 36 at 19-20.  He

10   suggests that maintaining a pre-approval requirement would pose an enormous obstacle to

11   borrowers facing a "limited" and "first-come, first-served" pool of funds.  *See id*.  Moreover,

12   Lopez says, lenders had no incentive to enter into such compensation agreements, since there were

13   "no shortage of loan applicants."  *Id.* at 20.  The Court need not reach the merits of these equitable

14   arguments, however, because nothing in statute supports them.  *See Am. Ins. Ass'n v. Garamendi*,

15   539 U.S. 396, 427 (2003) ("[O]ur thoughts on the efficacy of the one approach versus the other are

16   beside the point, since our business is not to judge the wisdom of the National Government's

17   policy; dissatisfaction should be addressed to the President or, perhaps, Congress.").

18        Accordingly, the Court concludes that the CARES Act and the SBA Rule do not require

19   lenders to pay agent fees for assistance with PPP loan applications, except as required under a

20   written compensation agreement.  In reaching this conclusion, the Court joins "every court that has

21   decided this issue."  *Am. Video Duplicating Inc. v. Citigroup Inc.*, No. 20-cv-03815-ODW

22   (AGRx), 2020 WL 6712232, at * 4 (C.D. Cal. Nov. 16, 2020) (citing *Sanchez, PC v. Bank of S.*

23   *Tex.*, No. CV-20-00139, 2020 WL 6060868 (S.D. Tex. Oct. 14, 2020); *Johnson v. JPMorgan*

24   *Chase Bank, N.A.*, No. CV-20-4100 (JSRx), 2020 WL 5608683 (S.D.N.Y. Sept. 21, 2020); *Sport*

25   *& Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 20-cv-05425-TKW-HTC, 2020 WL 4882416

26   (N.D. Fla. Aug. 17, 2020)); *see also Leigh King Norton & Underwood, LLC v. Regions Fin.*

27   *Corp.*, No. 2:20-cv-00591-ACA, 2020 WL 6273739 (N.D. Ala. Oct. 26, 2020).

28

United States District Court
Northern District of California

## 2.      Private Right of Action Under the CARES Act

BANA also argues that Lopez's claim for declaratory relief fails because there is neither a private right of action under the CARES Act nor any remedial "rights for agents."  ECF No 28 at 23-24.  Thus, there is no "judicially remediable right" on which to found a declaratory judgment. *Id.* (quoting *Schilling v. Rogers*, 363 U.S. 666, 667 (1960)).

Lopez does not contest this argument.  He identifies neither any private right of action in the CARES Act nor any language permitting an agent to sue for fees allegedly owed.  Instead, Lopez merely asserts that BANA's authorities – *Profiles Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742 (D. Md. 2020) and *Sport & Wheat*, 2020 WL 4882416 – "rested their dismissal of declaratory judgment claims on the fact that no apparent right was created."  ECF No. 36 at 23.

Lopez's failure to identify a "judicially remediable right" as the basis to seek declaratory relief under 28 U.S.C. § 2201 provides an additional independent reason to dismiss his declaratory judgment claim.

### B.      State Law Claims

Because each of Lopez's five remaining state law claims are predicated on his theory that he is entitled to an agent fee under the CARES Act and the SBA Rule, these claims also fail.

#### 1.      Unjust Enrichment

To state a claim for unjust enrichment under California law, a plaintiff must allege "the receipt of a benefit and the unjust retention of the benefit at the expense of another."  *Pinnacle Ventures LLC v. Bertelsmann Educ. Servs. LLC*, No. 18-cv-03412-BLF, 2020 WL 1082764, at *4 (N.D. Cal. Mar. 6, 2020) (quoting *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008)).  Lopez argues that BANA "obtained origination fees directly and immediately as a result of Mr. Lopez's efforts," and therefore owes him a portion of those fees.  ECF No. 36 at 24.  Lopez further contends that his claim can be maintained even if the Court finds that a compensation agreement was required.  *Id.*

Lopez fails to state a claim for unjust enrichment.  First, for the reasons discussed above, BANA's retention of its SBA lender fees without the payment of agent fees was not "unjust."  Second, despite his contention that he "provided [Bank of America] a benefit in the form of his

United States District Court
Northern District of California

services," *id.*, Lopez fails to show that the benefit was conferred on BANA rather than upon the client whose application he supported.  He does not allege that he assisted BANA with the loan, or that BANA would not have been awarded SBA lender fees but for his involvement.  *See* Compl. ¶¶ 45-47 (detailing services provided by Lopez to his client); *see also* ECF No. 36 at 20 (pointing out that "there were no shortage of [PPP] loan applicants").  Lopez's single cited authority does not support Lopez's theory that aiding his client "directly benefited" a third party so as to entitle him to restitution.  *See* ECF No. 36 at 25; *cf. Pro Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 241 (2018), *review denied* (Feb. 27, 2019) ("Plaintiff alleged numerous facts demonstrating that defendants knew or had reason to know of plaintiff's claim for fees . . . and that plaintiff had worked on a contingent fee basis.").  Lopez's unjust enrichment claim is dismissed.

### 2.    Conversion

"The elements of a claim for conversion under California law are: (1) the plaintiff's ownership or right to possession of property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Cottrell v. AT&T Inc.*, No. 19-cv-07672-JCS, 2020 WL 4818606, at *5 (N.D. Cal. Aug. 19, 2020) (quoting *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014)) (internal quotation marks and alterations omitted).  Because the Court has concluded that Lopez was not entitled to agent fees under the CARES Act or SBA Rule, he had no "right to possession of the property," meaning this claim also fails and is dismissed.  *See Welco Elecs.*, 223 Cal. App. 4th at 208.

### 3.    Money Had and Received

The elements of a money had and received claim are: "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment."  *Farmers Ins. Exch. v. Zerin,* 53 Cal. App. 4th 445, 459 (1997).  "Typically, to recover on a claim for money had a received, a plaintiff must prove that the defendant received money that was intended to be used for the benefit of the plaintiff."  *Falkenberg v. Alere Home Monitoring, Inc.*, No. 13-cv-00341-JST, 2014 WL 5020431, at *5 (N.D. Cal. Oct. 7, 2014) (internal quotations and citation omitted).  Again, Lopez asserts this claim based on his allegation that "[Bank of America] received origination fees for PPP loans that included agent fees that actually belong to agents."

17

ECF No. 36 at 26.  Lopez argues that he has "a superior right of possession to agent fees."  *Id.* at 27.  The Court has determined, however, that Lopez has not alleged a right to any portion of BANA's lender origination fees.  Accordingly, Lopez's claim for money had and received is dismissed.

### 4.   Breach of Contract – Third Party Beneficiary

Lopez alleges that he and putative class members are "intended beneficiaries" of the agreement entered into between BANA and the SBA.  Compl. ¶¶ 100, 103.  He further alleges that "[a]s part of the agreement, Defendant certified, under penalty of perjury, that it was in compliance and would remain in compliance with PPP Regulations that specifically require PPP lenders to pay the fees of any Agent that assists with successful PPP applications, within limits." *Id.* ¶ 102; *see also* ECF No. 28-13 (SBA 1102 Lender Agreement).  Lopez says that BANA breached the agreement by adopting a policy to not pay agents, including Lopez, absent a pre-existing fee agreement.  Compl. ¶ 105.

"When interpreting contracts under federal law, courts look to general common law on contracts."  *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013).  "One such general principle is that only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach."  *GECCMC 2005–C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1033 (9th Cir.2012).  "This distinguishes intended beneficiaries to a contract whose rights are judicially enforceable from incidental beneficiaries whose rights are not judicially enforceable."  *Id.*

Lopez argues that he is a third-party beneficiary of the SBA 1102 Lender Agreement because "it is clear from the contract as a whole that PPP loans are to be made consistent with the entirety of the PPP program rules, which provide for agent involvement and compensation."  ECF No. 36 at 29.  But the PPP program rules do not "provide for agent involvement and compensation," as the Court explains above.  And the Lender Agreement, taken "as a whole," gives no indication that agents are intended to benefit from the agreement.  The third-party beneficiary breach of contract claim is also dismissed.

### 5.       Violation of the California Unfair Competition Law

In his final cause of action, Lopez alleges that BANA's policy to only pay agent fees pursuant to a compensation agreement constitutes an "unlawful" practice in violation of the UCL. Compl. ¶¶ 111-12.  In his opposition, Lopez attempts to broadens this claim to include both the "unlawful" and "unfair" prongs of the UCL.  ECF No. 36 at 30.  He argues that his allegations of "violations of state common law and of the CARES Act and PPP governing regulations" show that BANA acted "unlawfully."  *Id.*  He argues that his allegation that BANA "retain[ed] agent fees due and owing to Mr. Lopez" shows that its practices were "unfair."  *Id.*

Under the UCL "unfair competition" means "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  A claim that sufficiently pleads any one of these prongs will survive a motion to dismiss.  *Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal. App. 4th 1544, 1554 (2007).  Section 17200's unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Davis v. HSBC Bank Nev., N.A.,* 691 F.3d 1152, 1168 (9th Cir. 2012) (citations omitted).  "Accordingly, to state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation."  *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1097 (N.D. Cal. 2014).  Because Lopez has failed to state a claim under any other theory, he has not alleged an "unlawful" practice to support a claim under the UCL.

There is a split among California courts as to the correct test for the "unfair" prong.  *See Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 612 (2014); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1098-99 (N.D. Cal. 2014).  Under one test, "an 'unfair' business practice occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *Id.* (quoting *Smith v. State Farm Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718-19 (2001)).  Under the second test, a party alleges an "unfair practice" if "(1) [t]he consumer injury [is] substantial; (2) the injury [is not] outweighed by any countervailing benefits to consumers or competition; and (3) it [is] an injury that consumers themselves could not reasonably have avoided."  *Id.* at 613 (quoting

*Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006)).[3]  Under the third test, a party alleges an "unfair business practice" where "defendant's conduct is tethered to an underlying constitutional, statutory or regulatory provision, or . . . threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law." *Id.* (quoting *Wilson v. Hynek*, 207 Cal. App. 4th 999, 1008 (2012)) (internal quotations and alterations omitted).

Lopez's complaint does not support a claim for "unfair" business practices under any test. He argues that "the failure to pay agent fees offends the public policy of efficiently facilitating small business loans under the PPP program."  ECF No. 36 at 30.  But while the SBA may have had an express objective to expeditiously provide relief to struggling businesses, neither the Administration nor Congress adopted a policy that requires the payment of agent fees without a compensation agreement.  BANA's practice does not "offend[] an established public policy," it does not cause a "consumer injury," and there is no violation of "an underlying constitutional, statutory or regulatory provision." *See Graham*, 226 Cal. App. 4th at 612-13.  "Quite simply, failing to pay agent fees that Defendants do not owe is not 'unfair.'" *American Video Duplicating, Inc. v. City Nat. Bank*, No. 2:20-cv-04036-JFW-JPR, 2020 WL 6882735, at *6 (C.D. Cal. Nov. 20, 2020).  Lopez's UCL claim is also dismissed.

**C.      Leave to Amend**

Under Federal Rule of Civil Procedure 15(a), leave to amend is freely given when justice so requires.  The Court may, however, "exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  In this case, it seems doubtful that Lopez could ever establish the entitlement to agent fees that is a predicate to each of his claims. Nonetheless, the Court will err on the side of caution and grant leave to amend.

---

[3] The Ninth Circuit rejected the *Camacho* test in *Lozano v. AT & T Wireless Servs., Inc.*, limiting application of that test to claims of unfair competition between direct competitors.  504 F.3d 718, 736 (9th Cir. 2007).

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the reasons set forth above, the Court grants BANA's motion to dismiss for failure to state a claim.  Any amended complaint must be filed within thirty days of the date of this order. Failure to file a timely amended complaint will result in dismissal of the case with prejudice.

**IT IS SO ORDERED.**

Dated:  December 4, 2020



_____
JON S. TIGAR
United States District Judge